EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Transporte Sonnell, LLC<br><br>Peticionaria<br><br>v.<br><br>Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico<br><br>Recurrida<br><br>First Transit PR, Inc.<br><br>Recurrida | Certiorari<br><br>2024 TSPR 82<br><br>214 DPR ___ |

Número del Caso:  AC-2023-0098

Fecha:  24 de julio de 2024

Tribunal de Apelaciones:

    Panel VII

Representantes legales de la parte peticionaria:

    Lcdo. Eliezer Aldarondo Ortiz
    Lcda. Rosa Campos Silva
    Lcdo. Simone Cataldi Malpica
    Lcda. Johanelle González Rodríguez

Representantes legales de las partes recurridas:

    Lcda. Mariacté Correa Cestero
    Lcdo. Álvaro A. Almonte Veloz
    Lcdo. Carlos J. Torres Vélez

Materia: Derecho Administrativo – Revisión de la adjudicación de un Requerimiento de Propuesta a una compañía que presentó Reportes y Estados Financieros de una entidad matriz con el fin de acreditar su propia capacidad financiera, pero que incumplió con otros requisitos dispuestos en los Pliegos de Especificaciones.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Transporte Sonnell, LLC<br><br>    Peticionaria<br><br>        v.<br><br>Junta de Subastas de la<br>Autoridad de Carreteras y<br>Transportación de Puerto Rico<br><br>    Recurrida<br><br><br>First Transit PR, Inc.<br><br>    Recurrida | AC-2023-0098 | |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 24 de julio de 2024.

En esta ocasión nos corresponde determinar si la adjudicación de un Requerimiento de Propuesta a una compañía que presentó Reportes y Estados Financieros de una entidad matriz con el fin de acreditar su propia capacidad financiera y que, además, incumplió con ciertos otros requisitos dispuestos en los Pliegos de Especificaciones, resultó ser un proceder apropiado por parte de la Autoridad de Carreteras y Transportación de Puerto Rico (ACT).

Luego de ejercer nuestra facultad revisora de manera concienzuda y meticulosa —y tomando en consideración el

impacto en el erario que tiene la adjudicación de un acuerdo como el que se pretende otorgar en este caso— contestamos esta interrogante en la negativa. Por las razones que procedemos a exponer, revocamos la adjudicación del Requerimiento de Propuestas aquí impugnado.

Veamos los hechos que dieron base al presente caso.

**I**

El 12 de abril de 2022, la ACT publicó un Aviso de Subasta, denominado *Request for Proposals (RFP) Núm. S-22-24, Operation and Maintenance of Fixed Route Bus Services*. Mediante el mismo, la agencia buscaba recibir propuestas de contratistas cualificados que tuvieran la capacidad de operar y mantener ocho (8) rutas del programa de transportación de autobuses que complementan al Tren Urbano. Para obtener los documentos relacionados al *Request for Proposals Núm. S-22-24* (RFP S-22-24), los licitadores tenían que completar y remitir a la ACT un formulario intitulado *Proposer Registration Form*. Conforme surge del expediente, varias entidades enviaron el referido documento, incluyendo entre estas a **First Transit PR, Inc.**[1] (First Transit PR) y Transporte Sonnell, LLC (Transporte Sonnell).

---

[1] Una búsqueda en el Registro de Corporaciones del Departamento de Estado permite apreciar que el nombre correcto de la entidad es "First Transit Puerto Rico, Inc.". Si bien así se identificó posteriormente en la propuesta sometida ante la ACT, en el *Proposer Registration Form* se denominó como "First Transit PR, Inc.".

Así las cosas, la ACT procedió a hacer entrega de los Pliegos de Especificaciones correspondientes. Según las instrucciones expuestas en el RFP S-22-24, las propuestas a ser sometidas debían contener dos paquetes sellados: uno con la Propuesta Técnica y otro con la Propuesta Económica y la Fianza de Licitación (*Bid Bond*). En cuanto a la Propuesta Técnica, la Sección 5.2 del RFP S-22-24 establecía que esta se evaluaría conforme a los factores siguientes:

> 5.2.1 Pass/Fail Evaluation Factors[2]
>     5.2.1.1 Required Forms and Certifications
>     **5.2.1.2 Legal**
>     **5.2.1.3 Financial Capabilities**
>     5.2.1.4 Equal Employment Opportunity and Other
>             Civil Rights Programs
> 5.2.2 Rated Technical Evaluation Factors[3]
>     5.2.2.1 Experience
>     5.2.2.2 Past Performance
>     5.2.2.3 Service Implementation
>     5.2.2.4 Key Personnel; References
>     5.2.2.5 Labor Relations and Personnel
>             Management
>     5.2.2.6 AVL/AVM System MIDSS Implementation

---

[2] Si un proponente obtenía "pass" en cada uno de estos factores, la agencia procedería a evaluar la Propuesta Técnica de este a la luz de los criterios expuestos en la Sección 5.2.2. Por el contrario, de obtener "fail" en cualquiera de los mencionados renglones, el proponente quedaría excluido de continuar participando del proceso de adquisición. Véase, Apéndice de *Certiorari*, pág. 135.

[3] El peso asignado a cada uno de estos factores era el siguiente:

| Criteria | Maximum Points |
|---|---|
| Experience | 20 |
| Past Performance | 20 |
| Service Implementation | 20 |
| Key Personnel; References | 15 |
| Labor Relations and Personnel Management | 5 |
| AVL/AVM System and MIDSS Implementation | 5 |
| Organization | 10 |
| Public Involvement | 5 |
| Total | 100 |

El proponente que obtuviera un mínimo de 75 puntos aprobaría la evaluación técnica. Íd., pág. 136.

5.2.2.7 Public Involvement
5.2.2.8 Organization

En lo pertinente, la Sección 5.2.1.2 pretendía identificar aquellos proponentes legalmente constituidos que pudieran someter propuestas responsivas y que tuviesen la capacidad de ejecutar el Contrato a ser otorgado. Para ello, requería que los licitadores incluyeran en sus propuestas ciertos datos, incluyendo entre estos:

1. **Description of the Proposer.** The Proposer shall provide full details of ownership and control of the Proposer; or, **if the Proposer is a partnership, joint venture or <u>consortium</u>, full details of ownership and control of each member or participant thereof.** The information must include, but limited by, the following information:

   a. Name and role of each corporate entity included in the Proposal.

   b. The Form of each corporate entity included in the Proposal (Corporation, Partnership, etc.).

   c. Primary location, address, email, telephone and fax numbers of each corporate entity included in the Proposal.

   d. An organization chart showing the priority and role of each company and lines of authority and approval.

   e. Name and address of any affiliated parent and/or subsidiary.

   f. The name, title, address, telephone number, fax number, and email address of the Primary Contact of the Proposer, plus the same data for an Alternative Contact should the Primary Contact be unavailable. All information and notices will be sent to the Primary Contact.

   […]

3. **If the Proposer is a consortium or joint venture, the Proposal must be signed by an officer of the lead company(ies) with signed letters from**

**authorized officials of the other participants confirming their participation.**

4. The Proposer shall provide a duly notarized Corporate Resolution identifying the person authorized to represent the Proposer to participate in the Request for Proposals.

[…] (Negrillas suplidas).[4]

Por su parte, la Sección 5.2.1.3 buscaba detectar licitadoras que pudieran asumir la responsabilidad financiera que representa un proyecto con el tamaño y complejidad como el que se otorgaría mediante el RFP S-22-24. Para cumplir con dicho fin, las proponentes debían someter, entre otras cosas, la información siguiente:

1. Statement of financial capability, **including audited financial statements for the most recent past three (3) fiscal years, in accordance with Generally Accepted Accounting Principles**, with all footnotes applicable to the financial statements signed by the Proposer's Chief Executive Officer (CEO) and Chief Financial Officer (CFO).

[…] (Negrilla suplida).[5]

Por otro lado, en cuanto al proceso de Requerimiento en general, la Sección 6 del RFP S-22-24 establecía que este se regiría por las disposiciones de Procedimiento Alterno de Selección dispuestas en el Art. VIII del Reglamento Núm. 5263, *infra*. A su vez, para evaluar las propuestas sometidas por los licitadores, la ACT nombraría un Comité Evaluador, el cual desplegaría sus labores en dos etapas distintas. En primer lugar, examinaría las Propuestas Técnicas de los proponentes a la luz de los criterios establecidos en las Secciones

---

[4] Íd., pág. 110
[5] Íd., pág. 111.

5.2.1 y 5.2.2 del RFP S-22-24. En segundo término, evaluaría las Propuestas Económicas de aquellos licitadores que aprobaran la primera etapa. La entidad que propusiera el precio más bajo sería recomendada por el Comité Evaluador para ser seleccionada por la Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico (Junta de Subastas) a obtener el Contrato objeto del RFP S-22-24.

Tras notificarse los pliegos del RFP S-22-24, la ACT realizó trece (13) enmiendas a estos. Entre ellas, mediante la Enmienda #5 la agencia reclasificó el Requerimiento de Propuestas para denominarlo como el RFP S-23-08.[6] Además, en el ínterin, la entidad llevó a cabo una reunión pre-subasta, hizo una inspección de la flota de vehículos y emitió una serie de respuestas, con documentación complementaria, para atender las preguntas sometidas por los licitadores interesados en participar del proceso.

Llegado el 13 de octubre de 2022 —fecha límite para participar del RFP S-23-08— la ACT recibió propuestas de dos entidades: **First Transit, Inc.** (First Transit) y Transporte Sonnell. En cuanto a la primera, surge del expediente que esta hizo constar en la propuesta remitida los datos siguientes:

---

[6] Íd., pág. 312.

| a. Name and Role of Corporate Entity | **First Transit, Inc.** | b. Form of Corporate Entity | Corporation |
|---|---|---|---|

[…]

| d.        Organization Chart | **First Transit is the only corporate entity included in this proposal.** |
|---|---|
| e.        Affiliated Parent Company | <u>**Our bidding company, First Transit Puerto Rico, Inc.,**</u> **is a wholly owned subsidiary of First Transit, Inc. First Transit, Inc. is a direct wholly-owned subsidiary of First Transit BidCo Inc. and an indirect wholly-owned direct subsidiary of Recess HoldCo, LLC.** |

[…] (Negrillas y subrayado suplidos)[7]

Además, con respecto a su información financiera, la entidad dispuso que:

> […]
>
> Audited financial statement have been provided for the most recent three fiscal years for Recess HoldCo, LLC or **equivalent Combined Carve-out financial statements** <u>**while owned under FirstGroup plc**</u>**. for our fiscal years ended March 2021, March 2020, and March 2019.** […][8] (Negrillas y subrayado suplidos).

Conforme surge de autos, los Estados Financieros sometidos fueron diseñados de acuerdo con los principios dispuestos en los International Financial Reporting Standards (IFRS).[9]

---

[7] Íd., pág. 1067.
[8] Íd., pág. 1070.
[9] Íd., pág. 3637.

Por su parte, Transporte Sonnel, LLC expresó ser una compañía de responsabilidad limitada, la cual contaba con tres afiliadas: Sonnell Transit Service, LLC, Sonnell Truck Center, LLC y Sonnell Fleet Solutions, LLC. A su vez, añadió que este conjunto de entidades era conocido como el Grupo Sonnell.[10] Sin embargo, aclaró que, para efectos del presente requerimiento, era Transporte Sonnell la entidad que comparecía como proponente. En ese aspecto, anejó a su propuesta sus Estados Financieros auditados —preparados de acuerdo con los Generally Accepted Accounting Principles (GAAP)— los cuales comprendían los periodos de diciembre 2021, diciembre 2020 y diciembre 2019.[11]

Posteriormente, el 28 de diciembre de 2022, el Comité Evaluador que constituyó la ACT envió a la Junta de Subastas un *Evaluation Committee Report and Recomendation (Tecnical Proposal Evaluation)*. En el referido Informe, dicho ente concluyó que las proponentes habían satisfecho gran parte de los factores establecidos en la Sección 5.2.1 del RFP S-23-08. Sin embargo, recomendó que estas sometieran información adicional para poder identificar si cumplían o no con la Sección 5.2.1.3, la cual requería la demostración de capacidad financiera. Requirió esto pues, según expuso, "una evaluación de los estados financieros realizada por el Sr. José Malavé Durant (Director [de la] Oficina de

---

[10] Íd., pág. 1328.
[11] Íd., págs. 1445-1499.

Tesorería de la ACT) indicaba que ambas firmas no est[aban] sólidas con respecto a 'Cash Flow'".[12] Por lo cual, consideraba "conveniente solicitarle[s] a l[as] proponentes información adicional reciente sobre los estados bancarios y las líneas de crédito disponibles para comenzar el contrato".[13] Por otra parte, con respecto a los factores a ser evaluados bajo la Sección 5.2.2 del RFP S-23-08, el Comité Evaluador le asignó 84.43 puntos a First Transit y 83.15 puntos a Transporte Sonnell.[14]

En vista de lo informado por el Comité Evaluador, y debido a que los Estados Financieros sometidos por First Transit no fueron preparados conforme a los GAAP, el 10 de enero de 2023 la ACT designó a un Contador Público Autorizado (CPA) externo para que sirviera como asesor del Comité Evaluador, sin derecho al voto, y examinara la información provista por las partes. Al llevar a cabo su encomienda, el asesor recomendó a la agencia que le requiriera a las compañías que sometieran Estados Financieros Interinos, los cuales cumplieran con los lineamientos dispuestos en los GAAP. En consecuencia, el 18 de enero de 2023 la Junta de Subastas envió un comunicado a las proponentes notificando que, en o antes

---

[12] Con el fin de analizar la situación financiera de las licitadoras, el Sr. José Malavé Durant, Director de la Oficina de Tesorería de la Autoridad de Carreteras y Transportación de Puerto Rico, realizó unas pruebas de los Estados Financieros correspondientes a **First Student and First Transit Businesses of First Group PLC** y Transporte Sonnell. Íd., págs. 1701-1703, 1704-1706.

[13] Íd., pág. 1707.

[14] Íd., pág. 1720.

del 1 de febrero de 2023, debían enviar un: "[e]stado [f]inanciero interino en el cual el final del per[i]odo evaluado no exceda de 90 días previo a la fecha de esta solicitud".[15]

Satisfecho el requerimiento, el 7 de febrero de 2023 el CPA envió a la Junta de Subasta el análisis financiero correspondiente. En su reporte, concluyó que Transporte Sonnell no logró aprobar la "Prueba Ácida"[16] realizada y que, tanto esta, como First Transit, tenían una proporción de deudas sobre activos que excedía el 50%.[17] En vista de lo anterior, el 17 de febrero de 2023 el Comité Evaluador notificó a la Junta de Subastas un *Addendum No. 1* a su *Evaluation Committee Report and Recomendation (Tecnical Proposal Evaluation)*. En su reporte, determinó que las proponentes tenían una estabilidad financiera moderada, por lo que recomendaba que se procediera a conocer las Propuestas Económicas sometidas por las proponentes.

---

[15] Surge del expediente que First Transit PR remitió a la Junta de Subastas **los Estados Financieros auditados de Recess HoldCo, LLC** para el año fiscal culminado en junio de 2022. Además, facilitó los Estados Financieros Interinos, no auditados, de esa última entidad, los cuales correspondían a los meses de julio, agosto y septiembre de 2022. Conforme expresó la propia entidad en una misiva incluida con los Informes Financieros, **los mismos fueron preparados utilizando los International Financial Reporting Standards (IFRS)** y no los Generally Accepted Accounting Principles (GAAP). Por su parte, Transporte Sonnell envió sus Estados Financieros no auditados para el periodo culminado en diciembre de 2022. A su vez, incluyó el Reporte Consolidado Pro-Forma del Grupo Sonnell para el año 2022. Íd., págs. 1754-1766, 5277-5374.

[16] Se trata de un indicador financiero utilizado para medir la liquidez de una empresa y su capacidad de pago. Determina la disponibilidad de recursos que posee la entidad para cumplir con sus obligaciones a corto plazo. Íd., pág. 3062.

[17] Íd., págs. 1769, 1771.

A tales efectos, el 3 de marzo de 2023, la Junta de Subastas llevó a cabo una reunión virtual, en la cual dio apertura a las propuestas de las licitadoras. Posteriormente, el 17 de mayo de 2023, este ente emitió un *Acta de Adjudicación*, recomendando a la ACT que adjudicara el RFP S-23-08 a First Transit PR por la cantidad de **$57,304,390.63**, por ser la entidad con la oferta económica más baja.[18] Como consecuencia de lo anterior, el 26 de junio de 2023, la ACT emitió y notificó un *Award Notification*, adjudicando la buena *pro* del RFP S-23-08 conforme fue sugerido por la Junta de Subastas.

Inconforme, el 14 de julio de 2023, Transporte Sonnell presentó un *Recurso de Revisión Administrativa* ante el Tribunal de Apelaciones.[19] En síntesis, alegó que la Junta de Subastas erró al adjudicar el RFP S-23-08 a First Transit PR debido a que esta: (1) incumplió con demostrar capacidad financiera, al someter Estados Financieros de una entidad que no compareció como proponente bajo el RFP S-23-08 y los cuales no fueron preparados conforme a los GAAP; (2) no notarizó la Resolución Corporativa requerida para acreditar la

---

[18] La propuesta de First Transit PR representaba un ahorro de $10,046,733.19 en comparación con la propuesta sometida por Transporte Sonnell, la cual ascendía a $67,351,123.82.

[19] Ese mismo día, Transporte Sonnell presentó una *Urgente Moción en Auxilio de Jurisdicción*, mediante la cual solicitó la paralización de los procedimientos relacionados a la adjudicación del RFP S-23-08 y cualquier contratación de los servicios incluidos en este. Sin embargo, el Tribunal de Apelaciones declaró No Ha Lugar la solicitud por medio de una Resolución emitida y notificada el 21 de julio de 2023.

persona autorizada a representar a la entidad en el procedimiento; y (3) remitió información y documentos de múltiples compañías que no fueron registradas como proponentes, no se encontraban autorizadas a hacer negocios en Puerto Rico, y tampoco contaban con el Certificado del Registro Único de Licitadores de la Administración de Servicios Generales (RUL).[20]

Tras suscitarse un extenso trámite procesal ante el Tribunal de Apelaciones, el 20 de septiembre de 2023, el foro intermedio emitió una Sentencia, notificada al día siguiente, mediante la cual confirmó la adjudicación del RFP S-23-08.[21] En apretada síntesis, concluyó que: (1) la

---

[20] Posteriormente, el 29 de agosto de 2023, Transporte Sonnell presentó una *Moción solicitando se tome conocimiento judicial*, en la cual informó que, el 2[5] de octubre de 2022, Transdev North America, Inc. formalizó un acuerdo para adquirir a First Transit Topco, Inc., entidad que incluía entre sus subsidiarias a: First Transit BidCo Inc., First Transit, Inc. y First Transit PR, Inc. Sin embargo, alegó que de los documentos sometidos por la Junta de Subastas no se desprendía que la proponente agraciada le hubiese notificado a esta el cambio en su estructura corporativa. Por su parte, First Transit PR y la Junta de Subastas se opusieron. En sus escritos, argumentaron que First Transit PR divulgó en los Estados Financieros Interinos que fueron sometidos de su entidad matriz que había una transacción de compra en proceso. En vista de lo anterior, el 12 de septiembre de 2023 el Tribunal de Apelaciones emitió y notificó una Resolución mediante la cual declaró No Ha Lugar la moción presentada por Transporte Sonnell. Véase, Apéndice de *Certiorari*, págs. 5410-5414, 5486-5488 & 5492-5496.

[21] Por su parte, la Jueza Brignoni Mártir disintió mediante las expresiones siguientes:
> Siendo el criterio de solvencia económica vital para la prestación de los servicios que se intentan adjudicar mediante esta subasta, no puedo ignorar el planteamiento sobre la dudosa capacidad financiera del licitador agraciado.

> La Junta de Subastas no ha tenido ante su consideración, la data económica de la compañía Transdev North America, Inc., adquiriente de First Transit Inc. por lo que no surge que durante su proceso de evaluación de propuestas, se ha corroborado que los servicios a ofrecerse mediante la presente subasta forman parte de su plan estratégico. Bajo estas circunstancias, el confirmar la adjudicación no sería procedente ante los alegados cambios en circunstancias esenciales que

Junta de Subastas no erró al considerar los documentos y Estados Financieros presentados por First Transit PR toda vez que el RFP S-23-08 no excluía la participación de consorcios; (2) que la Junta de Subastas podía aceptar los Estados Financieros preparados conforme a los principios contables internacionales, por tratarse de una "irregularidad menor"; (3) que si bien First Transit PR no presentó la Resolución Corporativa notarizada, dicha omisión era una "insustancial", toda vez que la irregularidad era subsanable a la firma del Contrato; (4) que la adjudicación del RFP S-23-08 a First Transit PR fue razonable, ante el hecho de que la licitadora propuso la oferta económica más ventajosa; y (5) que de la totalidad del expediente no surgía que la Junta de Subastas hubiese abusado de su discreción o actuado con prejuicio o parcialidad al evaluar las propuestas ante su consideración.

Insatisfecha, el 2 de octubre de 2023, Trasporte Sonnell, LLC presentó una *Moción de Reconsideración* ante el Tribunal de Apelaciones. Sin embargo, el foro apelativo intermedio denegó la misma mediante Resolución emitida y notificada el 5 de octubre de 2023.

Aún en desacuerdo, el 1 de noviembre de 2023, Transporte Sonnell compareció ante nos mediante el

---

podrían convertir esta importante adjudicación en una inoficiosa.

En su lugar, devolvería el expediente a la Junta de Subastas para que evalúe si procede confirmar, cancelar la adjudicación o emitir una nueva solicitud de propuestas. Íd., págs. 5515-5516.

recurso de epígrafe y le imputó al Tribunal de Apelaciones haber cometido los errores siguientes:

1. ERRÓ UNA MAYORÍA DEL PANEL DEL TA, AL CONFIRMAR LA ADJUDICACIÓN DEL RFP S-23-08 A FAVOR DE FIRST TRANSIT OF PUERTO RICO, INC. Y RECONOCER LA EXISTENCIA DE UN CONSORCIO, A PESAR DE QUE DICHA LICITADORA NO COMPARECIÓ AL RFP COMO TAL, SINO COMO UNA CORPORACIÓN, CON PERSONALIDAD JURÍDICA PROPIA E INDEPENDIENTE DE SUS DUEÑOS.

2. ERRÓ UNA MAYORÍA DEL PANEL DEL TA, AL CONFIRMAR LA ADJUDICACIÓN DEL RFP S-23-08 A FAVOR DE FIRST TRANSIT OF PUERTO RICO, INC., A PESAR DE QUE DICHA LICITADORA NO CUMPLIÓ CON LAS EXIGENCIAS Y REQUISITOS NECESARIOS PARA PODER PARTICIPAR COMO UN CONSORCIO, SEGÚN ESTABLECIDOS EN EL PLIEGO DE ESPECIFICACIONES DEL RFP S-23-08.

3. ERRÓ UNA MAYORÍA DEL PANEL DEL TA, AL CONFIRMAR LA ADJUDICACIÓN DEL RFP S-23-08 A FAVOR DE FIRST TRANSIT OF PUERTO RICO, INC., A PESAR DE QUE DICHA LICITADORA NO DEMOSTRÓ, NI ESTABLECIÓ, SU CAPACIDAD FINANCIERA. SE LIMITÓ A SOMETER ESTADOS FINANCIEROS [DE] OTRAS COMPAÑÍAS QUE NO FUERON PROPONENTES, NI ESTÁN REGISTRADAS EN EL DEPARTAMENTO DE ESTADO.

4. ERRÓ UNA MAYORÍA DEL PANEL DEL TA, AL CONFIRMAR LA ADJUDICACIÓN DEL RFP S-23-08 A FAVOR DE FIRST TRANSIT OF PUERTO RICO, INC., A PESAR DE QUE DICHA COMPAÑÍA FUE ADQUIRIDA, DESPUÉS QUE ÉSTA SOMETIÓ SU PROPUESTA, POR OTRA ENTIDAD TRANSDEV NORTH AMERICA, INC. --QUIEN NO PARTICIPÓ EN DICHO RFP. EN EL RÉCORD NO HAY NADA QUE DEMUESTRE LA CAPACIDAD O SOLVENCIA FINANCIERA DE ESTA ÚLTIMA PARA OPERAR EL CONTRATO MULTIMILLONARIO ADJUDICADO BAJO EL RFP S-23-08.

5. ERRÓ UNA MAYORÍA DEL PANEL DEL TA, AL CONFIRMAR LA ADJUDICACIÓN DEL RFP S-23-08 A FAVOR DE FIRST TRANSIT OF PUERTO RICO, INC., A PESAR DE QUE LA ACT OBVIÓ CAPRICHOSA, ARBITRARIA E INJUSTIFICADAMENTE SUS PROPIAS ESPECIFICACIONES.

El 26 de enero de 2023, acogimos el recurso de autos como *certiorari* y le concedimos a las partes recurridas treinta (30) días para que mostraran causa por la cual no

debíamos revocar la Sentencia del Tribunal de Apelaciones. Hicimos lo anterior bajo el fundamento de que First Transit PR no hubiese acreditado ante la Junta de Subastas que, como entidad jurídica separada e independiente de su entidad matriz, tuviese la capacidad financiera requerida para otorgársele el Contrato al amparo del RFP S-23-08.

Habiéndose cumplido lo ordenado, el 26 de marzo de 2024 emitimos y notificamos una Resolución mediante la que, entre otras cosas, expedimos el presente recurso y dimos por sometido el caso para su adjudicación en los méritos. Así las cosas, nos encontramos en posición de resolver.

**II**

**A.**

Al pasar juicio sobre alguna determinación administrativa, debemos recordar que las mismas gozan de una presunción de legalidad y corrección. *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016); *Empresas Toledo v. Junta de Subastas*, 168 DPR 771, 783 (2006). Particularmente, en lo que respecta a las subastas gubernamentales, la norma general es que las agencias administrativas retienen amplia discreción para evaluar las propuestas que son sometidas ante su consideración. *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978, 1006 (2009); *Accumail P.R. v. Junta Sub. A.A.A.*, 170 DPR 821, 828-829 (2007). Hacemos esto pues, de ordinario, son

los foros administrativos —y no los tribunales— quienes poseen la experiencia y especialización necesaria para seleccionar al postor que más convenga al interés público. *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 1006; *Perfect Cleaning v. Cardiovascular*, 172 DPR 139, 144 (2007).

Así pues, "[a]djudicada la buena *pro*, los tribunales no deben sustituir el criterio de la agencia o junta concernida, excepto si se demuestra que la decisión se tomó de forma arbitraria o caprichosa, o mediando fraude o mala fe". *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 1006. En ausencia de estos elementos, ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la "más ventajosa". *Torres Prods. v. Junta Mun. Aguadilla*, 169 DPR 886, 898 (2007); *Great Am. Indem. v. Gobierno de la Capital*, 59 DPR 911, 916 (1942). La cuestión debe decidirse a la luz del **interés público**. Íd. Por tanto, en estos casos, la determinación de la agencia debe ser sostenida siempre que satisfaga el criterio de **razonabilidad**. *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 1006; *Accumail P.R. v. Junta Sub. A.A.A.*, *supra*, pág. 829.

## B.

La subasta formal y el requerimiento de propuestas son los dos métodos utilizados por el Estado para adquirir sus bienes y servicios. *Puerto Rico Asphalt v. Junta*, 203 DPR 734, 737 (2019); *PR Eco Park, Inc. et al.*

*v. Mun. de Yauco*, 202 DPR 525, 531 (2019); *R & B Power v. E.L.A.*, 170 DPR 606, 620-621 (2007). Como fin principal, estos procesos buscan "proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles". *Puerto Rico Asphalt v. Junta*, *supra*, pág. 737; *Transporte Rodríguez v. Jta. Subastas*, 194 DPR 711, 716 (2016). A su vez, **salvaguardan los intereses del Estado**, pues procuran conseguir "los precios más económicos; evitar el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y **el descuido al otorgarse los contratos, y minimizar los riesgos de incumplimiento**". (Negrillas suplidas). *PR Eco Park, Inc. et al. v. Mun. de Yauco*, *supra*, pág. 531 (citando a *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 994).

Por otra parte, resulta importante mencionar que, **como la adjudicación de subastas gubernamentales conlleva el desembolso de fondos del erario, estos procedimientos están revestidos de un gran interés público y aspiran a promover una sana administración pública**. *Caribbean Communications v. Pol. de P.R.*, *supra*, pág. 994; *Costa Azul v. Comisión*, 170 DPR 847, 854 (2007); *A.E.E. v. Maxon*, 163 DPR 434, 438-439 (2004). Debido a ello, "la consideración primordial al momento de determinar quién debe resultar favorecido en el proceso de adjudicación de subastas, debe ser el interés público en proteger los fondos del Pueblo de Puerto Rico". *Caribbean*

*Communications v. Pol. de P.R.*, *supra*, pág. 994 (citando a *Cordero Vélez v. Mun. de Guánica*, 170 DPR 237, 245 (2007)).

Por otro lado, en cuanto al requerimiento de propuestas, en *R & B Power v. E.L.A.*, *supra*, págs. 621-622, expresamos que este se trata de un proceso utilizado para adquirir bienes o servicios especializados —que involucran asuntos altamente técnicos y complejos— o cuando existen escasos competidores cualificados. A su vez, explicamos que dicho proceso es uno informal y flexible, el cual admite negociación entre el oferente y la entidad gubernamental mientras se evalúan las propuestas recibidas. Sin embargo, hicimos hincapié en la necesidad de que el requerimiento enumere todos los requisitos y factores que se tomarán en cuenta al momento de escoger a la agencia que ejecutará el acuerdo y, además, **la importancia de que los licitadores sean responsivos a los mismos.**

Ahora bien, al igual que sucede con la subasta formal, no existe una ley que regule con uniformidad el método de requerimiento de propuestas. *PR Eco Park, Inc. et al. v. Mun. de Yauco*, *supra*, pág. 533; *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 346 (2016). Esto es así pues, conforme a la Ley Núm. 38-2017, según enmendada, conocida como Ley de Procedimiento Adjudicativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9601 *et seq.*, estos mecanismos se consideran procesos informales,

exentos de la aplicación de ese estatuto, con excepción de todo lo relacionado a los procesos de reconsideración y revisión judicial. Por tanto, las agencias administrativas son las facultadas a adoptar, mediante reglamentación, los procedimientos y las guías que regirán las subastas y los requerimientos de propuestas que estas tengan a bien celebrar. *PR Eco Park, Inc. et al. v. Mun. de Yauco*, *supra*, pág. 533; *CD Builders v. Mun. Las Piedras*, *supra*, pág. 346.

**C.**

El Art. 11 de la Ley Núm. 47 de 23 de junio de 1965, según enmendada, conocida como Ley de la Autoridad de Carreteras y Transportación de Puerto Rico, 9 LPRA sec. 2011 (Ley Núm. 47-1965), delegó en la ACT la facultad de establecer los procedimientos y las guías que regirían sus procesos de subastas. Además, dicho artículo instruyó a la agencia a que:

> **Al considerar proposiciones y hacer adjudicaciones, la Autoridad dará debida consideración a aquellos factores, además del precio, que a su juicio permita la selección más beneficiosa para la Autoridad, tales como: si el postor o licitador ha cumplido con las especificaciones, reglas y reglamentos aprobados por la Autoridad;** habilidad del postor para realizar trabajos de construcción o desarrollo de la naturaleza envuelta en el contrato bajo consideración; la calidad y adaptabilidad relativas de los materiales, efectos, equipo o servicios; **la responsabilidad y capacidad económica del licitador** y su pericia, experiencia, reputación comercial y habilidad para prestar servicios de reparación y, conservación o desarrollo; el tiempo de entrega o de ejecución que se ofrezca; y la capacidad para operar, administrar o explotar sistemas de transportación o aquello a que se

refiera la subasta, en aquellos casos que sea pertinente. […] (Negrillas suplidas).

Con esto en mente, la ACT adoptó el Reglamento de Subastas Núm. 5263 de la Autoridad de Carreteras y Transportación de 30 de junio de 1995 (Reglamento Núm. 5263), según enmendado, para, entre otras cosas, "establecer un proceso que sea justo para los [l]icitadores y que lleve a la selección de la propuesta que se considere más ventajosa para la Autoridad". Art. III(D) del Reglamento Núm. 5263, *supra*.

Además de cumplir con las disposiciones del Reglamento Núm. 5263, *supra*, cada propuesta debe satisfacer las condiciones específicas que la ACT establezca para una subasta en particular. *Aut. Carreteras v. CD* Builders, 177 DPR 398, 405 (2009). Véase, además: Art. IX(2) del Reglamento Núm. 5263; Art. 11 de la Ley Núm. 47-1965, *supra.* Estas especificaciones se establecen en los Documentos de Licitación, los cuales son definidos por el Reglamento Núm. 5263, *supra*, como aquellos que "la Autoridad le proporciona al licitador o proponente, y a base de los cuales éstos someten su licitación o propuesta". Art. IV(L) del Reglamento Núm. 5263, *supra*.

En atención a lo anterior, el Reglamento Núm. 5263, *supra*, faculta a la Junta de Subastas a recibir y evaluar las propuestas que presenten los licitadores y hacer recomendaciones "basadas en las especificaciones de la subasta y en armonía con los mejores intereses de la

[ACT]". Art. V(B)(2) del Reglamento Núm. 5263, *supra*. No obstante, en el ejercicio de su función, la Junta de Subastas "**recomendará que no se adjudique una subasta al licitador más bajo […] cuando dicho licitador haya dejado de cumplir con los términos estipulados en las condiciones de la subasta**". (Negrillas suplidas). Art. IX(A)(2) del Reglamento Núm. 5263, *supra*.

Por otra parte, el Reglamento Núm. 5263, *supra*, dispone que la "Junta [de Subastas] podrá, en el uso de su sana discreción, obviar cualquier **informalidad o tecnicismo** en los documentos de cualquier proposición, siempre que fueran errores subsanables". (Negrillas suplidas). Art. VII(F)(6) del Reglamento Núm. 5263, *supra*.[22] En otras palabras, "está facultada para obviar aquellos **defectos insustanciales que no constituyan un incumplimiento con los términos de la subasta** y que puedan soslayarse sin lesionar los objetivos del proceso de subasta". (Negrillas suplidas). *Aut. Carreteras v. CD Builders*, *supra*, pág. 409.

### III

En su recurso ante nos, Transporte Sonnell alegó, en síntesis, que el Tribunal de Apelaciones erró al confirmar la adjudicación del RFP S-23-08 realizada por la ACT. A su entender, la agencia administrativa actuó de

---

[22] De manera similar, la Sección 11 del RFP S-23-08 disponía que:

"the Authority reserves the right, in its sole and absolute discretion, to do any of the following: […]

Waive weaknesses, informalities, and minor irregularities in Proposals […]. Íd., págs. 143-144.

manera caprichosa, arbitraria e injustificada al obviar las especificaciones dispuestas en su Requerimiento de Propuestas. Sobre el particular, argumentó que First Transit PR no compareció al RFP S-23-08 como parte de un consorcio, según adjudicó el foro intermedio, sino como una corporación individual, separada e independiente de sus entidades matrices. En ese aspecto, considera que First Transit PR tenía el deber de presentar sus Estados Financieros con el fin de acreditar su capacidad financiera. Sin embargo, entiende que, al esta proveer información financiera de sus entidades matrices, las cuales no formaban parte del proceso, incumplió con los pliegos del RFP S-23-08. Por último, expuso que, catorce (14) días luego de someterse las propuestas correspondientes, First Transit PR fue adquirida por una nueva entidad. No obstante, alegó que esta última no adelantó nada sobre el particular en su propuesta —ni tampoco sometió los datos financieros del ente que la pretendía adquirir— por lo que la ACT no tuvo la oportunidad de pasar juicio sobre ese asunto al momento de adjudicar el RFP S-23-08.

Por su parte, First Transit PR presentó un alegato en oposición. A grandes rasgos, argumentó que el RFP S-23-08 no prohibía que la Junta de Subastas considerara Estados Financieros de afiliadas o matrices para

acreditar capacidad financiera de un proponente.[23] Añadió que, aun de entenderse lo contrario, el Art. VII(F)(6) del Reglamento Núm. 5263 y la Sección 11 del RFP S-23-08 facultaban a la Junta de Subastas a obviar cualquier informalidad o tecnicismo, como lo sería un asunto de tal naturaleza. No obstante, aseguró que del expediente surgía que los Estados Financieros sometidos por First Transit PR contemplaban a esa entidad como parte de los mismos. Además, adujo que el haberse nombrado a un CPA como perito consultor del Comité Evaluador ayudó a reforzar la acreditación de que First Transit PR contaba con la capacidad financiera para asumir el Contrato objeto del RFP S-23-08. Por último, dispuso que la determinación de la Junta de Subastas fue una razonable, basada en evidencia sustancial y la cual beneficiaba los intereses y las arcas del Gobierno de Puerto Rico.

De igual forma, la Junta de Subastas compareció y se opuso al presente recurso. Mediante su escrito, sostuvo que First Transit PR acreditó su capacidad financiera de forma razonable y sin riesgo material para la agencia al someter los Estados Financieros auditados de su entidad matriz. Además, dispuso que, existiendo pocos

---

[23] De igual forma, hizo referencia a varias decisiones del Tribunal de Apelaciones con el fin de movernos a concluir que la ACT podía tomar en cuenta los Estados Financieros de las entidades matrices de First Transit PR para acreditar la capacidad financiera de esta última. En ese aspecto, citó los casos siguientes: *SMT (Puerto Rico) v. FIGNA*, Caso Núm. KLRA202200519; *RG Engineering, Inc. v Autoridad de Energía Eléctrica de Puerto Rico*, Caso Núm. KLRA201900442; *Casa Melaza Corp. v. Compañía de Fomento Industrial*, Caso Núm. KLRA201500997 y *Skytec, Inc. v. Autoridad de Acueductos y Alcantarillados*, Caso Núm. KLRA201200215.

competidores para prestar los servicios subastados, por ser unos técnicos, complejos y altamente regulados, la experiencia y el conocimiento especializado de la ACT debía gozar de mayor relevancia. En ese aspecto, argumentó que la agencia actuó razonablemente al conceder el RFP S-23-08 a First Transit PR, por haber sido la entidad que presentó la propuesta económica más baja y que, además, demostró tener la capacidad, experiencia y el personal necesario para cumplir con las obligaciones que le imponía el Contrato en cuestión. Por último, sostuvo que, como parte de los procesos, las proponentes tenían que presentar una fianza de licitación la cual, a su entender, servía para asegurar la capacidad financiera de las mismas y, además, funciona como garantía en caso de que la entidad agraciada incumpla con el acuerdo.[24]

Evaluadas las comparecencias de todas las partes, entendemos que le asiste la razón a la parte peticionaria en sus argumentos. Veamos.

En este caso, un análisis del expediente ante nuestra consideración nos permite apreciar que si bien First Transit PR fue la entidad que suscribió el *Proposer Registration Form* para participar del RFP S-23-08, la compañía que sometió la propuesta en su representación lo fue su entidad matriz: First Transit. Al llevar a cabo esa gestión, este último ente remitió a la agencia

---

[24] Posteriormente, Transporte Sonnell presentó una réplica mediante la cual se opuso a los argumentos esbozados por las partes recurridas en sus alegatos y reiteró su postura sobre el asunto en controversia.

Estados y Reportes Financieros de compañías distintas y ajenas a First Transit PR, lo que conllevó que el Comité Evaluador y la Junta de Subastas evaluaran y tomaran en consideración información que no correspondía a la entidad que obtuvo la buena *pro* del RFP S-23-08. Para salvar esa discrepancia, las partes recurridas —e incluso el foro apelativo intermedio— intimaron que First Transit PR participó del proceso como un consorcio y que, por tanto, la adjudicación del Contrato debía ser sostenida bajo dicha premisa. No les asiste la razón.

Si bien es cierto que los pliegos del RFP S-23-08 permitían que un proponente compareciera como un consorcio, para ello resultaba necesario que este sometiera cierta información con el fin de acreditar que su participación sería bajo esa modalidad. En particular, la Sección 5.2.1.2(1) del RFP S-23-08 disponía que el proponente tenía que desglosar todos los detalles y datos de quiénes eran los propietarios del consorcio en cuestión y el control que ejercía cada miembro o participante sobre el mismo. Por su parte, la Sección 5.2.1.2(4) requería que la propuesta estuviese firmada por el oficial a cargo del grupo de empresas y, además, que se incluyeran ciertas misivas, firmadas por los oficiales representantes de las demás entidades participantes autorizando la comparecencia de estas en el proceso. Por último, la Sección 5.2.1.2(1)(d) del RFP S-23-08 exigía que se incluyera un organigrama que mostrara

el orden de prioridad y la línea de autoridad que tenía cada ente dentro del acuerdo.

Un examen de la propuesta sometida para First Transit PR refleja que esta no cumplió con ninguno de estos requerimientos. En otras palabras, **la entidad agraciada no sometió documento o credencial alguno que evidenciara que era parte de un consorcio o que representaba a un grupo de entidades que tuviera la intención de participar del RFP S-23-08 de manera conjunta.** Aunque en la propuesta se aludió a que First Transit PR pertenecía a un conglomerado de empresas como un ente subsidiario, se dispuso expresamente que, para efectos del presente proceso, esta era la entidad que comparecía como proponente.

Así pues, habiéndose determinado que First Transit PR participó del RFP S-23-08 de manera individual, nos resulta forzoso concluir que el Comité Evaluador no podía tomar en cuenta información de otras entidades para acreditar la capacidad financiera de esta. Sin embargo, en este caso ocurrió lo contrario. Desde un inicio, los Informes Financieros sometidos por First Transit PR correspondían a una entidad distinta. En particular, el Comité Evaluador tuvo ante su consideración los Estados y Reportes de **"First Student and First Transit Businesses of First Group PLC"** —línea de negocios a la cual pertenecía la proponente para el periodo evaluado en estos—. De igual forma, luego de que la Junta de Subastas

solicitara que las licitadoras enviaran reportes financieros adicionales, First Transit PR procedió a remitir los estados de **Recess HoldCo, LLC** —compañía que fungía como su compañía matriz para ese entonces—.[25]

Como si fuera poco, en ninguna de estas instancias la compañía agraciada cumplió con el requisito de que los Estados Financieros suministrados estuviesen preparados conforme a los lineamientos dispuestos en los GAAP, según lo había requerido la ACT en los pliegos del RFP S-23-08. Si bien lo anterior parecería ser una mera formalidad, la realidad es que el método que utilice una entidad para preparar sus Estados Financieros —a saber, GAAP o IFRS— conlleva un impacto en la información divulgada. Esto ocurre pues ambos modelos tienen sus diferencias, entre las que se pueden destacar: la forma en que se valorizan los activos, la manera en que se reportan los inventarios y el formato en que son preparados los estados de situación y flujos de efectivo de la entidad.[26]

Ciertamente, tanto el Reglamento Núm. 5263 como el RFP S-23-08 permitían que la Junta de Subastas soslayara cualquier informalidad o tecnicismo en las propuestas recibidas. Sin embargo, como dispusimos previamente, debe

---

[25] El Comité Evaluador pasó juicio sobre Estados y Reportes Financieros de dos entidades matrices previas de First Transit PR, las cuales, en la actualidad, ninguna es dueña de este ente. Esto es así pues, conforme surge del propio expediente, varios días luego de que la licitadora agraciada sometiera su propuesta ante la ACT, la misma fue adquirida por una nueva compañía matriz, a saber: Transdev North America, Inc.

[26] M. Gavin, *GAAP VS. IFRS: What are the key differences and which should you use?*, HBS Online, https://online.hbs.edu/blog/post/gaap-vs-ifrs (última visita, 13 de mayo de 2024).

tratarse de **defectos insustanciales, los cuales no constituyan un incumplimiento con los términos establecidos en la subasta y, además, que puedan obviarse sin lesionar los objetivos del procedimiento.** Consideramos que no estamos ante un escenario de este tipo. En este caso, la ACT tenía el interés de adjudicar un Contrato de Servicios cuyo costo representaba un impacto al erario de sobre **$50,000,000** en un periodo de **cinco (5) años.** Por tanto, la información financiera de las entidades proponentes resultaba ser una herramienta vital para poder determinar si estas contaban o no con la capacidad para asumir el Contrato que se pretendía adjudicar y que, además, pudieran brindar, de manera efectiva y eficiente, los servicios que la agencia buscaba adquirir.[27]

En ese sentido, considerar y evaluar los Informes Financieros de una entidad matriz, cuando en realidad era su subsidiaria la que buscaba obtener el acuerdo licitado, nos parece, a nuestro entender, un proceder errado de parte de la agencia, el cual de ninguna manera

---

[27] Una búsqueda en el Registro de Corporaciones del Departamento de Estado nos permite apreciar que First Transit PR contaba con la situación financiera siguiente:

|      | Activos | Pasivos | Equidad |
|------|---------|---------|---------|
| 2019 | $18,291,129 | $2,125,574 | $16,165,555 |
| 2020 | $18,537,355 | $2,150,137 | $16,387,218 |
| 2021 | $19,296,768 | $2,997,017 | $16,299,751 |
| 2022 | $17,774,879 | $3,057,607 | $14,717,272 |

Con un patrimonio que no ha sobrepasado los $20,000,000 en los últimos años, nos surgen serias dudas en cuanto a si First Transit PR tiene la capacidad para manejar un Contrato como el aquí subastado, el cual excede los $50,000,000.

puede ser avalado por este Tribunal.[28] Como bien es sabido "en una relación matriz-subsidiaria se respetará a las corporaciones como entidades separadas, aun cuando la matriz posea todas las acciones de [esta] y cuando sus oficiales y accionistas sean los mismos". C. Díaz Olivo, *Corporaciones: tratado sobre derecho corporativo*, 2da ed. rev., Ed. AlmaForte, 2018, pág. 146. Por lo cual, en caso de incumplimiento, será el ente subsidiario —y no su matriz— el que de ordinario responderá por la obligación contraída. Debido a ello, nos parece indispensable que todo proponente asegure y demuestre que tiene capacidad para asumir un acuerdo como el aquí subastado, independientemente del potencial económico que posean las entidades que formen parte del conglomerado al que este pertenezca.

---

[28] Debemos destacar que, aun cuando la ACT utilizó los servicios de un CPA para analizar la información financiera provista por las proponentes, entendemos que ello no tuvo el efecto de subsanar el error aquí imputado. Esto es así pues, si bien los Estados Financieros sometidos por First Transit PR contemplaban a dicha entidad como parte de los mismos, también incluían información de otras entidades subsidiarias de la compañía matriz para los cuales fueron preparados. Por lo cual, cualquier análisis realizado sobre estos reportes no representa de manera adecuada la situación financiera del único ente que buscaba participar del requerimiento de propuestas. En vista de lo anterior, el estudio realizado por el CPA resulta inmaterial a los efectos de determinar si la postora cumplía o no los requisitos de capacidad financiera dispuestos en el RFP S-23-08.

Por otra parte, entendemos que igual razonamiento debe aplicar al argumento de la Junta de Subastas de que, como en este caso se requirió que las licitadoras sometieran una fianza de licitación (*Bid Bond*) para participar del proceso, ello tenía el efecto de demostrar que una fiadora externa acreditaba la capacidad financiera de estas para cumplir con sus obligaciones contractuales al amparo del RFP S-23-08. Sobre el particular, entendemos que el criterio de la agencia administrativa —a través de su Comité Evaluador y Junta de Subastas— es el que debe imperar al momento de determinar la capacidad de un proponente para obtener la buena *pro* y no el de una aseguradora, ajena al proceso, y cuyos factores para otorgar una fianza son inconsecuentes al mismo.

Por todo lo anterior, consideramos que procede la revocación de la adjudicación del RFP S-23-08 que realizó la Junta de Subastas. El proceder del ente administrativo no se ajustó al criterio de razonabilidad que debe imperar en este tipo de caso. Al apartarse de los criterios de evaluación dispuestos en los pliegos del RFP S-23-08, la Junta de Subastas incumplió con su deber de salvaguardar los mejores intereses del Gobierno de Puerto Rico.

## IV

Por los fundamentos antes expuestos se revoca la Sentencia del Tribunal de Apelaciones y, como consecuencia de ello, la adjudicación del RFP S-23-08 que hizo la ACT. Así las cosas, se devuelve el asunto ante la consideración de la agencia administrativa para que, de aún entenderlo procedente, convoque un nuevo requerimiento de propuestas para obtener los servicios que pretendía contratar.

Se dictará Sentencia de conformidad.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Transporte Sonnell, LLC<br><br>     Peticionaria<br><br>          v.<br><br>Junta de Subastas de la<br>Autoridad de Carreteras y<br>Transportación de Puerto Rico<br><br>     Recurrida<br><br><br>First Transit PR, Inc.<br><br>     Recurrida | AC-2023-0098 | |

SENTENCIA

En San Juan, Puerto Rico, a 24 de julio de 2024.

Por los fundamentos antes expuestos se revoca la Sentencia del Tribunal de Apelaciones y, como consecuencia de ello, la adjudicación del RFP S-23-08 que hizo la ACT. Así las cosas, se devuelve el asunto ante la consideración de la agencia administrativa para que, de aún entenderlo procedente, convoque un nuevo requerimiento de propuestas para obtener los servicios que pretendía contratar.

Lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez disiente con la expresión siguiente a la cual se une la Jueza Presidenta Oronoz Rodríguez:

"El Juez Asociado señor Estrella Martínez disiente del curso de acción adoptado por una mayoría de este Tribunal y hace constar lo siguiente:

Un examen del expediente del recurso de epígrafe confirma que se debió aplicar el principio de deferencia a las agencias administrativas que históricamente ha sido

resguardado por este Tribunal. Ello ante la actuación razonable, por parte de la Autoridad de Carreteras y Transportación (ACT), en la adjudicación de un Requerimiento de Propuestas altamente técnico.

Y es que, a pesar de que First Transit PR, Inc. presentó la oferta sustancialmente más baja y que la ACT contó con el asesoramiento de un Contador Público Autorizado que confirmó la capacidad financiera de tal licitador, este Tribunal optó por rechazar la pericia y experiencia de la agencia recurrida e ignorar el grado de especialidad que requería la adjudicación para, según indica, proteger el erario. Un erario que, según se desprende del expediente, ya estaba siendo protegido por las medidas que había tomado la ACT.

Por entender que las circunstancias de esta controversia no justificaban la intromisión por parte de este Tribunal en la adjudicación de esta subasta, que se demostró la capacidad económica de First Transit PR, Inc. y que la propia parte peticionaria, Transporte Sonnell, LLC, no se adhirió estrictamente a los requisitos durante el proceso, disiento."

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo