| Estado Libre Asociado de Puerto Rico TRIBUNAL DE APELACIONES PANEL VI | | |
|---|---|---|
| COMISIONADO DE SEGUROS DE PUERTO RICO  Recurrido  v.  MAPFRE PRAICO INSURANCE COMPANY  Recurrente | KLRA202500053 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina del Comisionado de Seguros de Puerto Rico  Caso número: I-2024-35  Sobre: Violación a los Artículos 27.161(1) del Código de Seguros de Puerto Rico, 26 LPRA § 2716(3) y 26 LPRA § 2716a(1) |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 12 de mayo de 2025.

Comparece la parte recurrente, MAPFRE PRAICO Insurance Company, mediante un recurso de revisión judicial, y nos solicita que revoquemos la determinación emitida y notificada por la Oficina del Comisionado de Seguros de Puerto Rico el 23 de diciembre de 2024. Mediante el referido dictamen, la agencia confirmó una *Orden* previa sobre la devolución de unas primas producto de la cancelación de una póliza de seguro, así como la imposición de una multa administrativa a la parte recurrente.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida. Veamos.

## I

Surge del expediente ante nos que, el 4 de agosto de 2023, Jennifer F. Rodríguez González (Rodríguez González) compró un vehículo marca Land Rover, modelo Defender 130 X, del año 2023,

en el concesionario Land Rover de San Juan (Concesionario).[1] Se desprende de los documentos que obran en autos que, como parte de los beneficios de la compra de dicho automóvil, el Concesionario le ofreció a Rodríguez González una cubierta de la póliza de seguro libre de costo por un (1) año, a través del representante autorizado One Mobility, LLC, la cual fue aceptada por Rodríguez González con la condición de que la póliza fuera comercial. Acordado lo anterior, la Póliza Núm. 1211238001961 (Póliza) fue emitida por MAPFRE PRAICO Insurance Company (MAPFRE o recurrente) a nombre de Rodríguez González y pagada en su totalidad por el Concesionario por la cantidad de $5,701.00. Expedida la Póliza, el 16 de agosto de 2023, Rodríguez González recibió una copia de esta y se percató que era una póliza personal y no comercial, como lo había solicitado al momento de la compraventa. Por tal razón, el 13 de septiembre de 2023, Rodríguez González solicitó la cancelación de la Póliza a MAPFRE y la devolución de la prima.[2] Sin embargo, el 15 de noviembre de 2023, MAPFRE emitió un cheque por la cantidad de $5,701.00 a nombre del Concesionario, por concepto de devolución de prima, bajo el fundamento de que este último fue quien pagó la referida prima en su totalidad. Así las cosas, el 5 de abril de 2024, Rodríguez González presentó una solicitud ante la Oficina del Comisionado de Seguros de Puerto Rico (OCS).[3] En específico, peticionó que se investigara si MAPFRE había actuado incorrectamente cuando esta le solicitó la cancelación de la Póliza, pero la aseguradora devolvió la prima al Concesionario.

Atendido el petitorio, el 17 de junio de 2024, el Comisionado de Seguros emitió y notificó una *Orden*, mediante la cual ordenó, en lo pertinente, que MAPFRE devolviera las primas producto de la

---

[1] Véase, Apéndice del recurso, pág. 1.
[2] Íd., pág. 2.
[3] Íd., pág. 1.

cancelación de la Póliza a Rodríguez González y le impuso una multa administrativa de $3,500.00, por violación al Artículo 27.161(1) del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716ª(1).[4] En particular, la agencia concluyó que MAPFRE hizo una falsa representación de los términos de la Póliza al emitir el pago de la prima en su totalidad a favor del Concesionario, estableciendo de esa manera que era este último quien tenía derecho a la devolución de la prima. Determinó, además, que MAPFRE violentó el Artículo 27.160(3) del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716(3), al no devolver el dinero de la prima no devengada a la persona nombrada en la Póliza con derecho a ello; es decir, a Rodríguez González.[5] A su vez, resolvió que MAPFRE violentó el Artículo 27.161(1) del Código de Seguros de Puerto Rico, *supra*, al realizar una interpretación contraria a lo establecido en la Póliza sobre la persona que tenía derecho a la devolución de la prima.

En desacuerdo, el 8 de julio de 2024, MAPFRE instó una *Moción de Desestimación de Orden*.[6] En síntesis, arguyó que la referida determinación excedía las facultades que su ley habilitadora le brindaba a la OCS, por lo que tal dictamen era *ultra vires*. Adujo, además, que la aplicación del derecho realizada por el Comisionado de Seguros no correspondía a las circunstancias fácticas del presente caso y, por tanto, eran erróneas. En virtud de ello, solicitó que se desestimara la imputación contenida en la mencionada *Orden*. En la alternativa, solicitó la celebración de una vista, conforme al Artículo 2.190 del Código de Seguros de Puerto Rico, 26 LPRA sec. 251.

En atención a ello, el 17 de julio de 2024, notificado el día siguiente, el Oficial Examinador de la OCS emitió un *Aviso de Vista*

---

[4] Apéndice del recurso, págs. 1-5.
[5] Íd., pág. 3.
[6] Íd., págs. 7-15.

*y Señalamiento.*[7] En específico, la vista fue señalada para el 7 de agosto de 2024, posteriormente reseñalada para el 19 de septiembre del mismo año,[8] y se desglosó los asuntos que las partes debían considerar de cara a la audiencia.

Luego de varios trámites procesales, el 19 de septiembre de 2024, la OCS instó una *Solicitud de Resolución Sumaria.*[9] En esencia, argumentó que de la prueba documental no surgían controversias sobre hechos materiales, por lo que no había necesidad de celebrar una vista evidenciaria, pues el pleito se podía resolver por la vía sumaria. Planteó que MAPFRE no devolvió las primas objeto de una cancelación de póliza a la persona con derecho a ello, incumpliendo así con lo dispuesto en los Artículos 27.160(3) y 27.161(1) del Código de Seguros de Puerto Rico, *supra.*

En respuesta, el 9 de octubre de 2024, MAPFRE se opuso.[10] Indicó que coincidía con la OCS en que no existían controversias de hechos materiales. En vista de ello, adujo que restaba por resolver las controversias de derecho en cuanto a la interpretación errónea de la Póliza realizada por la OCS. Argumentó que el Artículo 27.160(3) del Código de Seguros de Puerto Rico, *supra,* no aplicaba al caso de epígrafe porque el precitado articulado aplicaba exclusivamente a situaciones donde se cobraba una cantidad en exceso de la prima o cargo por seguro realmente gastada; mientras que el presente caso era sobre la devolución de una prima no devengada por motivo de cancelación. De igual forma, planteó que el Artículo 27.161(1) del Código de Seguros de Puerto Rico, *supra,* tampoco aplicaba al presente caso, toda vez que este aplicaba exclusivamente a situaciones de ajuste de reclamaciones, lo cual no ocurrió en el presente pleito. Por lo tanto, alegó que la OCS no le

---

[7] Apéndice del recurso, págs. 17-19.
[8] Íd., págs. 25-26.
[9] Íd., págs. 247-258.
[10] Íd., págs. 341-351.

podía imputar haber realizado falsas representaciones de los hechos o de los términos de la Póliza, en el marco de un ajuste de reclamación, cuando no existía una reclamación, sino una solicitud de reembolso de prima no devengada.

Evaluadas las posturas de las partes, el 23 de diciembre de 2024, el Comisionado de Seguros emitió y notificó la *Resolución* que nos ocupa, mediante la cual confirmó la *Orden* del 17 de junio de 2024.[11] En particular, la agencia desglosó las siguientes determinaciones de hechos:

1. El Asegurador está autorizado debidamente por la OCS para contratar negocios de seguros en esta jurisdicción.

2. El 4 de agosto de 2023, la Solicitante compró al Concesionario el vehículo Land Rover Defender 130X, año 2023, en adelante "el Vehículo".

3. El Asegurador emitió la Póliza para el periodo del 4 de agosto de 2023 al 4 de agosto de 2024; que fue pagada en su totalidad por el Concesionario por la cantidad de $5,701.00.

4. El 16 de agosto de 2023, el Asegurador, a través de One Mobility[,] LLC, envió la Póliza a la Solicitante.

5. La Póliza dispone, en parte:
   A cambio del pago de la prima, y sujeto a todos los términos y condiciones de esta póliza, acordamos con usted lo siguiente:

   **DEFINICIONES**

   A. En esta póliza, los términos "usted" y "su" se refieren a las siguientes personas:

      1. al "asegurado nombrado" que aparece en las Declaraciones...

   ...

   **PARTE F – DISPOSICIONES GENERALES**

   ...

   **TERMINACIÓN**

---

[11] Apéndice del recurso, págs. 417-445.

### A. Cancelación

Esta póliza puede cancelarse, durante el periodo de vigencia de la misma, de la manera siguiente:
1. El asegurado nombrado en las Declaraciones podrá cancelarla del modo siguiente:

   a. ...

   b. dándonos una notificación escrita por adelantado de la fecha en que entrará en vigor la cancelación.

...

### D. Otras Disposiciones de Terminación

1. ...

2. Si se cancela esta póliza, usted puede tener derecho a un reembolso de la prima. De ser así, le enviaremos el reembolso...

6. El 13 de septiembre de 2023, la Solicitante, asegurad[a] nombrad[a] en la Póliza, solicitó la cancelación y devolución de la prima no devengada al Asegurador, indicando en parte: "El motivo de la cancelación es que contrat[é] otra agencia de seguros con mejor cubierta. Adjunto evidencia de la póliza nueva y carta de pago.".

7. El 15 de noviembre de 2023, el Asegurador canceló la Póliza y emitió el cheque núm. 2305558, por la cantidad de $5,701.00, a nombre del Concesionario, por concepto de la devolución de prima.

8. El 5 de abril de 2024, la Solicitante presentó ante la OCS una solicitud de investigación para que se investigara la actuación del Asegurador al ella solicitar la cancelación de la Póliza bajo su nombre y el Asegurador devolver la prima al Concesionario. Expuso:

   El pasado viernes[,] 4 de agosto de 2023[,] compr[é] un vehículo en la Land Rover de San Juan donde en el acuerdo del vehículo me incluían la póliza de seguro de la guagua. En el acuerdo se acordó *[sic]* que la póliza ten[í]a que tener los mismos parámetros que establece mi póliza comercial actual de todos nuestros vehículos. Cuando me envía la póliza varios días después de estar pidiéndola y la rizamos [sic][,] no cumple con los parámetros acordado[s, por] lo cual rechaz[é] dicha póliza. Ellos acuerdan corregirla para su cumplimiento según acordado. Varios días después envían una nueva póliza mejorada[,] pero ta[mp]oco cumple con la totalidad de nuestras necesidades y a[sí] fue notificada.

Le indicamos al dealer que no queríamos dicha póliza[,] que la íbamos [a] asegurar nosotros y que ellos no[s] devolvieran el dinero de la prima. Posteriormente[,] ya nosotros teniendo la guagua asegurada con nuestra compañía Universal por la negociación de parte de Mapfre a igualar las coberturas según acordado[,] el dealer nos nieg[a] la devolución del dinero por[que] había una póliza activa en Mapfre. Lo cual procedimos nosotros a hablar con Mapfre y cancelar la póliza emitida a nuestro vehículo para que nos devolvieran la prima no devengada debido a que nosotros pagamos una nueva. Mapfre procedió a la cancelación, pero el cheque de devolución fue enviado al dealer y no a nosotros como nos corresponde. Además, que ese dinero est[á] incluido en el costo de financiamiento de la guagua por First Bank de Puerto Rico.

Dicho [f]inanciamiento como la póliza de seguro está a [n]ombre de Jennifer F. Rodríguez González. A estos efectos[,] ninguna de las 2 entidades[,] el dealer como Mapfre[,] nos quieren [de]volver el dinero de un contrato de seguro que nunca se [h]a utilizado y que fue rechazado desde su inicio. Cualquier información adicional[,] no dude en comunicarse con nosotros. Espero que nos puedan ayudar con esta situación.

9. El 11 de abril de 2024, la OCS cursó el Requerimiento de Información Núm. I-26633-2024 al Asegurador quien, en Contestación a Requerimiento de Información fechado 3 de mayo de 2024, indicó que canceló la Póliza y emitió el cheque a favor del Concesionario, toda vez que este fue quien pagó la prima en su totalidad, "por lo que es la persona con derecho a recibir la devolución". Expuso, además, en parte:

1. ...

[...]

4. Como parte de los beneficios que le fueron ofrecidos al adquirir su vehículo de motor, el concesionario le ofreció una póliza de seguro de auto de MAPFRE, a través del agente de seguros One Mobility[,] LLC, cuya prima sería satisfecha por Land Rover [de] San Juan. Del cliente no desearlo, tiene completa discreción y autonomía de rechazarlo y obtener el seguro que mejor le convenga y se ajuste a sus necesidades, con el productor de su predilección, a su costo.

5. ...

6. Contrario a lo que alega la Solicitante, de la propia documentación de financiamiento con

First Bank (contrato de arrendamiento)[,] no surge que se haya incluido la prima de la póliza de seguro que fuera satisfecha por el concesionario de autos.

7. La póliza fue pagada por Land Rover de San Juan en su totalidad. El aceptar o no la póliza es opcional del cliente.

8. El 13 de septiembre de 2023, la Solicitante requirió mediante notificación escrita la cancelación de la póliza núm. 1211238001961 a fecha de incepción, al haber optado por asegurar su vehículo con otra compañía, anejando evidencia de la póliza nueva y la carta de pago.

9. Conforme a dicha solicitud, MAPFRE canceló la referida póliza y emitió un cheque por el valor de $5,701.00[,] en pago de la devolución total de la prima, a favor del Land Rover de San Juan, toda vez que fue [e]ste el que pagó la prima en su totalidad, por lo que es la persona con derecho a recibir la devolución.

10. En vista de lo anterior, resulta evidente que la devolución de prima requerid[a] por la Solicitante no le corresponde, de proceder en contrario, se configuraría un enriquecimiento injusto para consigo, toda vez que no es la persona con derecho a recibir la prima devuelta puesto que la totalidad del pago fue efectuado por Land Rover de San Juan y no por la Solicitante.

El Comisionado de Seguros determinó que, de una lectura de la Póliza, se desprendía expresamente que únicamente Rodríguez González podía cancelar la Póliza y solicitar el reembolso de la prima, no el Concesionario. Resaltó que, tanto Rodríguez González como MAPFRE expusieron que el pago de la totalidad de la prima por parte del Concesionario se realizó como parte de los beneficios ofrecidos a Rodríguez González al adquirir el vehículo descrito. Concluyó que, al no devolver el dinero de prima no devengada a la persona nombrada en la Póliza con derecho a ello (Rodríguez González), MAPFRE incurrió en violación al Artículo 27.160(3) del Código de Seguros de Puerto Rico, *supra*. De igual forma, resolvió que, con una interpretación contraria a lo establecido en la Póliza sobre la persona que tenía derecho a la devolución de la prima, MAPFRE realizó una

falsa representación de los términos de la Póliza, violentando así el Artículo 27.161(1) del Código de Seguros de Puerto Rico, *supra*. Cónsono con ello, coligió que el remedio y la multa administrativa impuesta estaban dentro del conocimiento especializado del Comisionado de Seguros, cumplían con los objetivos y la autoridad de la OCS y no excedían lo permitido por ley. En virtud de ello, confirmó la *Orden* del 17 de junio de 2024, sobre la devolución a Rodríguez González de la prima, así como los intereses legales correspondientes, producto de la cancelación de la Póliza, a tenor con el Artículo 27.160(3) del Código de Seguros de Puerto Rico, *supra*, así como la multa administrativa impuesta de $3,500.00, por violación al Artículo 27.161(1) del Código de Seguros de Puerto Rico, *supra*.

Inconforme con la determinación de la agencia, el 22 de enero de 2025, la parte recurrente compareció ante nos y señaló los siguientes errores:

> La OCS actuó de manera arbitraria y caprichosa al entrar en interpretaciones de la póliza de seguros sin tener la facultad para hacerlo.

> La OCS actuó de manera arbitraria y caprichosa al determinar que MAPFRE violentó el Artículo 27.160(3) del Código de Seguros.

> La OCS actuó de manera arbitraria y caprichosa al hacer determinaciones de hecho que no están sustentadas en el expediente administrativo.

> La OCS actuó de manera arbitraria y caprichosa al imponer una multa por la alegada violación al Artículo 27.161(1) del Código de Seguros.

En cumplimiento con nuestra *Resolución* del 24 de enero de 2025, y luego de una prórroga a esos efectos, la parte recurrida compareció mediante *Alegato* el 10 de marzo del año corriente.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

## II

## A

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, resuelto el 24 de junio de 2024; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Transporte Sonnell, LLC v. Junta de Subastas de la Autoridad de Carreteras y Transportación de Puerto Rico y otro*, 2024 TSPR 82, resuelto el 24 de julio de 2024; *Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 753 (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos

que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, y *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Katiria's Café, Inc. v. Municipio Autónomo de San Juan*, 2025 TSPR 33, resuelto el 27 de marzo de 2025, citando a *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012); *Rolón Martínez v. Supte. Policía,* supra, págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores,*

supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que

conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

El negocio de seguros se encuentra revestido de un alto interés público por el rol vital que juega esa industria en la sociedad y economía. *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.*, 2024 TSPR 101, resuelto el 16 de septiembre de 2024; *W.M.M., P.F.M. et al. v. Colegio et al.*, 211 DPR 871 (2023); *OCS v. Universal*, 187 DPR 164, 174 (2012). El contrato de seguros es uno mediante el cual una persona se obliga a indemnizar a otra, pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en la obligación. *Íd.*; Art. 1.020 del Código de Seguros de Puerto Rico, 26 LPRA sec. 102. En este tipo de contrato, la parte asegurada transfiere el riesgo a la compañía aseguradora a cambio de una prima y surge una obligación por parte de esta de responder por los daños económicos que sufra la asegurada en caso de ocurrir el evento específico. *Barreto Nieves et al. v. East Coast*, 213 DPR 852 (2024); *Coop. Ahorro y Créd. Oriental v. S.L.G.*, 158 DPR 714, 721 (2003).

El Código de Seguros de Puerto Rico, Ley Núm. 77 de 19 de junio de 1957, según enmendada, 26 LPRA sec. 101 *et seq.* (Código de Seguros), regula las prácticas comerciales de esta industria. *Rivera Candela y otra v. Universal Insurance Company*, 2024 TSPR 99, resuelto el 11 de septiembre de 2024; *W.M.M., P.F.M. et al. v. Colegio et al.*, supra. En particular, el Artículo 11.140 del Código de Seguros, 26 LPRA sec. 1114, dispone que la póliza es el instrumento donde se deja por escrito un contrato de seguros y se articulan los riesgos que cubre el seguro, las exclusiones y todas las condiciones de este. Al determinar cuáles son los riesgos cubiertos por un seguro, es necesario considerar si en el contrato figura alguna

"cláusula de exclusión". Estas cláusulas tienen el propósito de limitar la cubierta establecida en el acuerdo principal y disponen que la parte aseguradora no responderá por determinados eventos, riesgos o peligros. *Monteagudo Pérez v. E.L.A.*, 172 DPR 12, 21 (2007). Para interpretar esas cláusulas y el contrato de seguros en general, el Artículo 11.250 del Código de Seguros, 26 LPRA sec. 1125, expone lo siguiente:

> Todo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado por aditamento, endoso o solicitud adherido a la póliza y que forme parte de [e]sta. Véase, *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.*, supra; *Barreto Nieves et al. v. East Coast*, supra.

La jurisprudencia considera el contrato de seguro como uno de adhesión, ya que es la parte aseguradora quien redacta la póliza conforme a sus intereses sin la intervención directa de la parte asegurada. *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023); *Quiñones López v. Manzano Pozas*, 141 DPR 139, 155 (1996). En vista de la naturaleza de este tipo de contrato, la parte aseguradora tiene la obligación de establecer en la póliza, de forma clara, los riesgos por los que está obligada a responder. *Meléndez Piñero v. Levitt Sons of P.R.,* 129 DPR 521, 547 (1991). Por lo tanto, las normas de interpretación general de los contratos recogidas en el Código Civil de Puerto Rico aplicarán únicamente de forma supletoria. *Barreto Nieves et al. v. East Coast*, supra.

Igualmente, el Tribunal Supremo de Puerto Rico adoptó como regla general la interpretación liberal a favor de la parte asegurada en este tipo de contrato. *Aparicio v. Asoc. de Maestros*, 73 DPR 596 (1952). En *Quiñones López* v. *Manzano Pozas*, supra, pág. 155, nuestro más Alto Foro explicó este principio de la siguiente forma:

> [E]n caso de dudas en la interpretación de una póliza, [e]sta debe resolverse de modo que se realice el propósito de la misma: proveer protección [a la parte]

asegurad[a]. Es por eso que no se favorecerán las interpretaciones sutiles que le permitan a las compañías aseguradoras evadir su responsabilidad. Corresponde a los tribunales buscar el sentido y significado que a las palabras de la póliza en controversia le daría una persona normal de inteligencia promedio que fuese a comprar la misma.

No obstante, este principio de interpretación no tiene el efecto de obligar a los tribunales a decidir a favor de la parte asegurada una cláusula que claramente le da la razón a la aseguradora cuando su significado y alcance sea claro y libre de ambigüedad. *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003). Al ser el contrato de seguro uno de adhesión, si sus cláusulas están libres de ambigüedad y son claras en cuanto a su significado y alcance serán obligatorias y constituirán ley entre las partes. *Carrasquillo Pérez et al. v. Asociación y/o Consejo de Titulares del Condominio Parque 352 et al.*, supra; *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 387 (2009); *TOLIC v. Febles Gordián*, 170 DPR 804, 812 (2007). Los términos de una póliza se reputarán claros cuando su lenguaje sea específico, cuando no dé lugar a dudas o cuando no sea susceptible a distintas interpretaciones. *Íd.* A su vez, "los términos de las pólizas de seguro deben ser generalmente entendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". *Íd.*, citando a *Echandi Otero v. Stewart Title*, 174 DPR 355, 370 (2008).

En lo atinente a la controversia ante nos, el Artículo 27.160 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716, establece lo relacionado al tráfico ilegal de primas. En específico, el inciso (3) de dicho artículo dispone que:

[...]

(3) Deberá devolverse a la persona con derecho a ello, dentro de treinta (30) días de la fecha en que se lo solicite, o de no habérsele solicitado, dentro del término de noventa (90) días, cualquier suma cobrada como prima o cargo por seguro en exceso de la suma realmente gastada para el seguro, o por examen médico

en el caso de un seguro de vida aplicable al objeto por el cual se ha cobrado dicha prima o cargo.

La persona que no devuelva dichas sumas, dentro del término indicado en este apartado, vendrá obligada a pagar intereses legales sobre el monto de la cantidad a ser devuelta.

[...]

Por su parte, el Artículo 27.161 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716a, gobierna lo relacionado a las prácticas desleales en el ajuste de reclamaciones. *Consejo Titulares v. MAPFRE*, 208 DPR 761, 774-775 (2022). En particular, el primer inciso del precitado artículo reza como sigue:

En el ajuste de reclamaciones ninguna persona incurrirá o llevará a cabo, cualquiera de las siguientes prácticas desleales:

(1) Hacer falsas representaciones de los hechos o de los términos de una póliza, relacionados con una cubierta en controversia.

[...]

Por otro lado, respecto a la penalidad por incumplimiento con las disposiciones del Código de Seguro de Puerto Rico, el Artículo 2.250 de dicho estatuto, 26 LPRA sec. 257, establece que, cualquier violación a las disposiciones de este y de las reglas o reglamentos promulgados, estarán sujetas a una multa administrativa no menor de quinientos dólares ($500.00), ni mayor de diez mil dólares ($10,000.00) por cada violación. Lo anterior es reiterado en el Artículo 27.260 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2735, el cual dispone que, cualquier persona que violase una disposición del precitado Código, se le podrá imponer una multa administrativa que no excederá de diez mil dólares ($10,000.00) por cada violación.

## C

En múltiples ocasiones, el Tribunal Supremo de Puerto Rico ha reiterado que la Oficina del Comisionado de Seguros (OCS) es la entidad encargada de reglamentar todos los asuntos relacionados a

la industria de seguros en Puerto Rico. *MCS Advantage v. Fossas Blanco et al.*, 211 DPR 135, 148 (2023); *ECP Incorporated v. OCS*, 205 DPR 268, 275 (2020). Ello, conforme a las facultades delegadas por la Asamblea Legislativa a la OCS, por medio del Código de Seguros de Puerto Rico, *supra. Íd.*

Bajo este supuesto, el Comisionado de Seguros de Puerto Rico tiene el deber de fiscalizar y reglamentar el cumplimiento de las disposiciones creadas por la citada ley. Así, ostenta la facultad de "llevar a cabo las investigaciones y exámenes que considere necesarias para asegurar el cumplimiento de las disposiciones del Código, su reglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de [e]stas. Para ello utilizará aquellos mecanismos necesarios". Art. 2.030 del Código de Seguros de Puerto Rico, 26 LPRA sec. 235; *ECP Incorporated v. OCS*, supra, pág. 276; *MCS Advantage v. Fossas Blanco et al.*, supra, pág. 149.

En específico, el Artículo 2.030 del Código de Seguros de Puerto Rico, *supra*, dispone que el Comisionado de Seguro cuenta con las siguientes facultades:

> (1) El Comisionado tendrá la autoridad que expresamente se le confiera por las disposiciones de este Código o que resulten razonablemente implícitas de dichas disposiciones.
>
> (2) El Comisionado desempeñará sus deberes y hará cumplir las disposiciones de este Código. Del mismo modo deberá velar para que la administración de la política pública responda a los más elevados criterios de excelencia y eficiencia, que proteja adecuadamente el interés público y responda a las necesidades de los tiempos y a los cambios que ocurran o se anticipen en la industria de seguros y en su reglamentación.
>
> (3) El Comisionado podrá interponer cualesquiera remedios, acciones o procedimientos legales que fueran necesarios o convenientes para hacer efectivos los propósitos de este Código o cualquier ley o reglamento, cuyo cumplimiento o fiscalización le haya sido asignada, ya sea representado por el Secretario de Justicia o, previa autorización de [e]ste, por sus propios abogados. Además, el Comisionado podrá designar a un funcionario de la Oficina para que le brinde apoyo y

asesoramiento al fiscal del Departamento de Justicia que tenga la encomienda de instar un procedimiento criminal por violación a las leyes, reglamentos u órdenes bajo la administración de la Oficina.

[…]

(10) El Comisionado dictará y notificará las órdenes que estime necesarias y adecuadas para hacer cumplir las disposiciones de este Código y de cualquier otra ley o reglamento administrado por [e]ste. La orden expresará sus fundamentos y las disposiciones legales de acuerdo con las cuales se dicta la orden o se intenta tomar acción. La orden indicará, además, la fecha en la cual la misma surtirá efecto.

(11) …

(12) El Comisionado podrá llevar a cabo las investigaciones y exámenes que considere necesarias para asegurar el cumplimiento de las disposiciones del Código, su reglamento y las órdenes que ha emitido, y para obtener toda la información útil a la administración de [e]stas. Para ello utilizará aquellos mecanismos que estime necesarios. La investigación o examen podrá extenderse a cualquier persona o entidad que tenga o haya tenido negocios de seguros y a aquellas entidades comerciales o empresas que tengan relación comercial con [e]stas. El alcance de la investigación o examen podrá extenderse fuera de la jurisdicción de Puerto Rico.

(13) …

(14) El Comisionado tendrá el poder de adjudicar controversias sobre violaciones al Código o su reglamento, cumpliendo para ello con el procedimiento dispuesto en la Ley de Procedimiento Administrativo Uniforme.

[…]

(17) El Comisionado tendrá la facultad de imponer sanciones y penalidades administrativas por violaciones a este Código y a los reglamentos aprobados en virtud de [e]ste y dictar cualquier remedio pertinente autorizado en el Código.

Asimismo, el Artículo 4 de la Regla 1(I-A) del Reglamento Núm. 5266 de la OCS, respecto al alcance de las investigaciones realizadas por el ente, dispone que:

El Comisionado podrá llevar a cabo las investigaciones e inspecciones convenientes para asegurar el cumplimiento de las distintas disposiciones del Código de Seguros de Puerto Rico y su Reglamento, de las [Ó]rdenes y Resoluciones que ha emitido aquél y sobre cualquier otro asunto que guarde relación con la materia de seguros. Llevará a cabo, además, las

investigaciones necesarias para obtener toda la información útil a la administración de las disposiciones legales y reglamentarias que le corresponde poner en vigor, y toda aquella información pertinente al asunto objeto de la investigación. Dicha investigación podrá extenderse a entidades que tengan o hayan tenido relación con seguros. Véase, además, *ECP Incorporated v. OCS*, supra, pág. 276.

Sobre ese particular, nuestro más Alto Foro ha expresado que, si bien es cierto que la autoridad concedida a la OCS es amplia, esta se limita a la reglamentación de la industria de seguros y a la administración y cumplimiento del Código de Seguros de Puerto Rico, *supra*, y de los reglamentos promulgados por su entidad administrativa. *ECP Incorporated v. OCS*, supra, pág. 276.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

La parte recurrente plantea en su primer señalamiento de error que la OCS actuó de manera arbitraria y caprichosa al entrar en interpretaciones de la póliza de seguros sin tener la facultad para hacerlo. Como segundo señalamiento de error, arguye que la OCS actuó de manera arbitraria y caprichosa al determinar que esta había violento el Artículo 27.160(3) del Código de Seguros de Puerto Rico, *supra*. En su tercer señalamiento de error, alega que la OCS actuó de manera arbitraria y caprichosa al hacer determinaciones de hecho que no están sustentadas en el expediente administrativo. Como cuarto y último señalamiento de error, sostiene que la OCS actuó de manera arbitraria y caprichosa al imponer una multa por la alegada violación al Artículo 27.161(1) del Código de Seguros de Puerto Rico, *supra*. Por estar relacionados entre sí, discutiremos los referidos errores en conjunto.

Según esbozamos, el Comisionado de Seguros está facultado para atender las controversias que surjan por violaciones al Código de Seguros de Puerto Rico, *supra*, así como para imponer sanciones

y penalidades administrativas a esos efectos. Por otro lado, en lo pertinente, el Artículo 27.160(3) del Código de Seguros de Puerto Rico, *supra*, dispone que deberá devolverse a la persona con derecho a ello cualquier suma cobrada como prima o cargo por seguro en exceso de la suma realmente gastada para el seguro. Asimismo, el Artículo 27.161(1) del Código de Seguros de Puerto Rico, *supra*, establece que en el ajuste de reclamaciones ninguna persona realizará falsas representaciones de los hechos o de los términos de una póliza, relacionados con una cubierta en controversia. Cualquier violación a las disposiciones de dicho estatuto estarán sujetas a una multa administrativa.

En el caso de autos, MAPFRE emitió una Póliza que, en lo pertinente, reza como sigue:

**DEFINICIONES**

B. En esta póliza, los términos "usted" y "su" se refieren a las siguientes personas:

1. **al "asegurado nombrado" que aparece en las Declaraciones**…

…

**PARTE F – DISPOSICIONES GENERALES**

…

**TERMINACIÓN**

**B. Cancelación**

Esta póliza puede cancelarse, durante el periodo de vigencia de la misma, de la manera siguiente:

1. **El asegurado nombrado en las Declaraciones podrá cancelarla** del modo siguiente:

a. …

b. dándonos una notificación escrita por adelantado de la fecha en que entrará en vigor la cancelación.

…

**D. Otras Disposiciones de Terminación**

1. ...

2. **Si se cancela esta póliza, usted puede tener derecho a un reembolso de la prima**. De ser así, le enviaremos el reembolso... (Énfasis nuestro).

De lo anterior surge expresamente que quien tiene derecho a cancelar la póliza de seguro es la persona asegurada nombrada en las "Declaraciones" de la póliza. Asimismo, esa persona es quien tiene el derecho de recibir la devolución o reembolso de la prima. Examinada la Póliza en cuestión, surge de las "Declaraciones" que la persona asegurada nombrada es Rodríguez González. Es decir, una vez Rodríguez González solicitó la cancelación de la póliza y esta fue aprobada por la aseguradora, MAPFRE tenía que reembolsarle el pago de la prima a esta. Sin embargo, surge de los hechos estipulados por las partes que MAPFRE realizó la devolución al Concesionario. Ello, por interpretar que, al ser el Concesionario quien realizó la totalidad del pago de la prima, era la persona con derecho a recibir su reembolso. No obstante, de una lectura de la Póliza en controversia, no cabe duda, ni hay espacio a interpretación en contrario, de que la persona con derecho a recibir ese pago es Rodríguez González, asegurada y nombrada en las "Declaraciones", independientemente de quien realizó el pago. Ante tal interpretación errónea y falsa representación desplegada por MAPFRE, la agencia recurrida tenía la facultad de multarla por su equivocado proceder.

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario atribuible a la OCS. Por tanto, en ausencia de prueba al contrario, solo podemos sostener su determinación.

**IV**

Por los fundamentos que anteceden, confirmamos la determinación administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones