ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XII

| | | |
|---|---|---|
| WILSON COTTO GONZÁLEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN Y OTROS<br><br>Recurrido | TA2025RA00043 | *REVISIÓN ADMINISTRATIVA* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: PA144-25<br><br>Sobre: Revisión de Remedios Administrativos |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Juez Lotti Rodríguez.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 15 de agosto de 2025.

Comparece ante *nos*, Wilson Cotto González (Cotto González o recurrente), quien se encuentra confinado en la Institución Correccional Ponce 1,000 y recurre por derecho propio *in forma pauperis.* En su recurso, Cotto González nos solicita que revisemos una *Respuesta del Área Concernida / Superintendente* emitida el 14 de mayo de 2025, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o recurrida). Mediante dicha determinación, el DCR determinó que el 18 de noviembre de 2020, se le practicó una nueva Hoja de Control sobre Liquidación de Sentencia. Además, dispuso que los delitos bajo la Ley de Armas que deban cumplirse de forma natural no serán acreedores de bonificación por buena conducta y asiduidad.

Acogido el recurso presentado como uno de revisión judicial y por los fundamentos que expondremos a continuación, se *confirma* la determinación recurrida.

**I.**

Conforme surge del escrito de revisión judicial, Cotto González se encuentra confinado en la Institución Correccional Ponce 1,000, cumpliendo una *Sentencia* de quince (15) años por el Artículo 189 del Código Penal de Puerto Rico y de tres (3) años por el Artículo 5.05 de la Ley de Armas de Puerto Rico de 2000. En su recurso, este alegó que la *Sentencia* debía ser cumplida de forma consecutiva entre sí.

Así las cosas, Cotto González presentó una *Solicitud de Remedios* número PA-144-25, con el propósito de que se le aplicara la Ley Núm. 87 del 4 de agosto de 2020 (Ley Núm. 87-2020) a la *Sentencia* por el Artículo 5.05 de la Ley de Armas de Puerto Rico. Consecuentemente, el 14 de mayo de 2025, el DCR emitió una *Respuesta del Área Concernida / Superintendente.* Mediante esta, se le indicó al recurrente que el 18 de noviembre de 2020 se le practicó una nueva *Hoja de Control sobre Liquidación de Sentencia* conforme a lo establecido en la Ley Núm. 87-2020 y que le fue entregada el 24 de noviembre de 2020. Además, se le informó que la *Sentencia* bajo la Ley de Armas que por disposición de ley deban cumplirse de forma natural no serán acreedores de bonificación por buena conducta y asiduidad.

Inconforme, el 12 de junio de 2025 el recurrido compareció ante *nos* mediante un recurso de revisión judicial, el cual fue recibido en la Secretaria de este Tribunal el 20 de junio de 2025 y planteó que erró la parte recurrida, porque la *Sentencia* bajo ningún concepto le fue impuesta de forma natural, sino de forma consecutiva. Alegó que la Ley Núm. 87-2020 no excluye la Ley de Armas de las bonificaciones por buena conducta y asiduidad de la cual es acreedor. Por lo cual, solicitó que se ordene al área de récord criminal del DCR a acreditarle la bonificación por buena conducta y asiduidad bajo la Ley Núm. 87-2020.

El 7 de julio de 2025, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte recurrida para presentar su posición al recurso. El 29 de julio de 2025, la parte recurrida presentó un *Escrito en Cumplimiento de Resolución*. Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección*, 174 DPR 247 (2008).

La Sección 4.2 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9672). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson, Passalacqua v. Quirós, Betances*, 2024 TSPR 64, 214 ___ (2024). Véase, además, *Capó Cruz v. Jta. Planificación et al.*, 204 DPR 581 (2020); *Empresas Ferrer, v. A.R.Pe*, 172 DPR 254 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Voilí Voilá Corp., et al. v. Mun. Guaynabo*, 213 DPR 743 (2024). A su vez, posibilita el poder constatar que los organismos

administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". *Íd.* Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección. *Transporte Sonell, LLC. v. Junta de Subastas*, 2024 TSPR 82, 214 DPR ___ (2024); *OCS v. CODEPOLA*, 202 DPR 842 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal*, 187 DPR 164 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Voilí Voilá Corp., et al. v. Mun. Guaynabo, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales

no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro,* 206 DPR 803 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26 (2018). Por ende, los tribunales deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados. Sin embargo, a la luz de *Loper Bright Enterprises v. Raimondo,* U.S., 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024) y *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ___ (2025), al revisar las conclusiones de derecho los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias.

Así pues, son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado. *Vázquez v. Consejo de Titulares, supra.* El foro judicial será quien deberá resolver todas las cuestiones de derecho pertinentes, las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y la revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente. *Íd.*

Lo anterior responde a la vasta experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, 214 DPR ___ (2024); *González Segarra et al. v. CFSE,* 188 DPR 252 (2013).

Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Otero Rivera v. Bella Retail Group, Inc. y otros, supra*; *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, *supra,* las determinaciones de derecho serán revisadas en su totalidad. Sección 4.5 de la LPAU, *supra*; Torres *Rivera v. Policía* de PR, *supra,* pág. 627.

Así pues, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Vázquez v. Consejo de Titulares, supra.* Pero principalmente, los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua. *Íd.* Así, reiteramos que la interpretación

de la ley es una tarea que corresponde inherentemente a los tribunales. *Íd.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos.

### B. Buena conducta y asiduidad

El DCR se reorganizó mediante la aprobación de la Ley Núm. 2 de 21 de noviembre de 2011 (3 LPRA, Ap. XVIII, Art. 1) (Ley Núm. 2-2011), también conocida como el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, según enmendado. El DCR posee la responsabilidad de implantar la política pública del sistema correccional, incluyendo lo relativo a la rehabilitación de todos los ofensores y transgresores del sistema de justicia criminal del país. (3 LPRA, Ap. XVIII, Art. 4). Por lo cual, como parte de sus funciones y facultades, deberá asegurar la aplicación correcta de los sistemas de bonificación por, entre otras cosas, buena conducta. (3 LPRA, Ap. XVIII, Art. 5).

En virtud del Artículo 11 de la Ley Núm. 2-2011 (3 LPRA, Ap. XVIII, Art. 11), se regula lo concerniente a la rebaja de términos de sentencias de los confinados que observaren buena conducta y asiduidad. Este Artículo fue enmendado por la Ley Núm. 87-2020, "a los fines de conceder a toda persona sentenciada bajo los Códigos Penales de 2004 y 2012 la oportunidad de recibir bonificaciones por buena conducta y asiduidad". Véase, Exposición de Motivos de la Ley Núm. 87-2020. Esto pues, tanto el Código Penal de 2004 como el Código Penal de 2012 no contemplaron un sistema de rebajas a los términos de las sentencias por razón de buena conducta y asiduidad. *Íd.*

No obstante, no todos los confinados pueden beneficiarse de una rebaja en los términos de sus sentencias. El propio Artículo 11 de la Ley Núm. 2-2011 establece que: "[s]e excluye de las

bonificaciones que establece este Artículo toda condena [...] que deba cumplirse en años naturales. Además, el mencionado Artículo establece que "[l]as rebajas de términos de sentencias dispuestas en este Artículo por buena conducta y asiduidad, aplicarán a toda persona sentenciada a cumplir término de reclusión bajo [...] cualquier ley especial que en sus disposiciones no las excluya [...]. *Íd.*

Por lo que, si concurre alguna de las exclusiones antes mencionadas, no podrá aplicársele bonificaciones por razón de buena conducta y asiduidad a la sentencia del confinado.

De otro lado, el derogado Artículo 5.05 de la *Ley de Armas de Puerto Rico*, Ley 404 de 11 de septiembre de 2000, que penalizaba la portación y uso ilegal de armas blancas y por cuya infracción fue condenado Cotto González, disponía que: "[l]as penas que aquí se establecen serán sin derecho a sentencia suspendida, a salir en libertad bajo palabra, o a disfrutar de los beneficios de algún programa de desvío, bonificaciones o alternativas a la reclusión, reconocidas en esta jurisdicción, debiendo cumplir en años naturales la totalidad de la pena impuesta. (25 LPRA sec. 458d) (derogado).

**III.**

En el caso de autos, Cotto González fue sentenciado a cumplir quince (15) años por el Artículo 189 del Código Penal de Puerto Rico y de tres (3) años por el Artículo 5.05 de la Ley de Armas de Puerto Rico de 2000. La *Sentencia* debía ser cumplida de forma consecutiva entre sí y en años naturales de cárcel. Procurando una rebaja en los términos de su *Sentencia*, la parte recurrente solicitó que se le otorgaran bonificaciones por buena conducta y asiduidad.

Según el derecho antes esbozado, las bonificaciones por buena conducta y asiduidad no se conceden de forma automática. El Artículo 11 de la Ley Núm. 2-2011 excluye expresamente de las

bonificaciones, entre otras condenas, aquellas que deban cumplirse en años naturales. También, dicho Artículo excluye a toda persona sentenciada a cumplir término de reclusión bajo cualquier ley especial que en sus disposiciones no las excluya.

Así, el derogado Artículo 5.05 de la Ley de Armas de Puerto Rico de 2000, *supra*, estableció, claramente, que las penas serán sin derecho a bonificaciones o alternativas a la reclusión, debiendo cumplir en años naturales la totalidad de la pena impuesta.

Por consiguiente, aunque es cierto que la Ley Núm. 87-2020 cambió el estado de derecho y se ampliaron las alternativas para que más confinados puedan solicitar bonificaciones por conducta y asiduidad, tampoco es menos cierto que se reconocieron exclusiones a este beneficio. Así pues, es un hecho incontrovertido que Cotto González está cumpliendo su *Sentencia* en años naturales; por ende, resulta de aplicación la exclusión dispuesta en la Ley Núm. 87-2020 y la parte recurrente está impedida de reclamar dicho beneficio. En conclusión, no incidió la División de Remedios Administrativos al emitir el dictamen recurrido.

**IV.**

Por los fundamentos antes expuestos, *confirmamos* la *Respuesta del Área Concernida / Superintendente* emitida el 14 de mayo de 2025, por el DCR.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones