Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| HERMANN D. BAUER ÁLVAREZ Y/O EILEEN M. MONTALVO MUÑOZ<br><br>Parte Recurrente<br><br>v.<br><br>CONSEJO DE TITULARES Y/O JUNTA DE DIR COND. CONDADO TOWERS REP. POR SU PRES. LILI SEIN; ZIDNIA PADIN, ANA SABATIER, APM ADMINISTRATION GROUP<br><br>Parte Recurrida | TA2025RA00008 | Revisión Judicial de Decisión Administrativa procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2025-0021265<br><br>Sobre:<br>Ley de Condominios de Puerto Rico, Ley Núm. 129 de 16 de agosto de 2020, según enmendada |

Panel integrado por su presidente, el Juez Pagán Ocasio, el Juez Rodríguez Flores y el Juez Sánchez Báez.[1]

Rodríguez Flores, juez ponente.

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de agosto de 2025.

Comparece el Sr. Hermann D. Bauer Álvarez, la Sra. Eileen M. Montalvo Muñoz y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Bauer-Montalvo) mediante recurso instado el 20 de junio de 2025. Solicitan que revoquemos la *Resolución* emitida el 24 de abril de 2025, por el Departamento de Asuntos del Consumidor (DACo). Mediante el referido dictamen, el DACo desestimó con perjuicio la querella de epígrafe, número C-SAN-2025-0021265, por duplicidad del reclamo, al concluir que éste está siendo atendido en la querella número C-SAN-2023-0015552 previamente incoada por el matrimonio Bauer-Montalvo.

Evaluado el recurso, el alegato en oposición y los apéndices de los escritos, resolvemos revocar la determinación recurrida.

[1] OATA-2025-120.

**I.**

El Condominio Condado Towers (Condominio), localizado en el 1115 de la Calle Piccioni, San Juan; Puerto Rico, está sometido al régimen de propiedad horizontal.[2] El edificio tiene siete (7) plantas, la primera dedicada a estacionamiento de automóviles y usos accesorios, y las restantes seis (6) plantas, cinco (5) de ellas constan de dos (2) apartamentos de vivienda y la última constituye un (1) solo apartamento dedicado también a vivienda. El área de estacionamiento es un elemento común del Condominio, pero el espacio está "distribuido entre todos los condómines de manera que cada uno de los apartamentos tenga un local para estacionar".[3] A ninguno de los apartamentos del Condominio se le asignó, en su descripción individualizada, un espacio de estacionamiento.

El matrimonio Bauer-Montalvo es titular del apartamento 2-A del Condominio. El 21 de julio de 2023, instó ante el DACO la querella número C-SAN-2023-0015552[4]. Mencionó que cuando adquirió el apartamento, éste tenía asignado un espacio para el estacionamiento de un automóvil. Además, alegó que, en una asamblea celebrada allá para la década del 2000, el Consejo de Titulares del Condominio (Consejo) le asignó a su apartamento un segundo espacio de estacionamiento, por el cual el matrimonio Bauer-Montalvo paga una cuota adicional. Se adujo que ese segundo estacionamiento anteriormente estaba designado para los visitantes del Condominio.

En la querella número C-SAN-2023-0015552, el matrimonio Bauer-Montalvo adujo que el proceso de convocatoria, celebración y acuerdos tomados durante la asamblea que se llevó a cabo el 31 de mayo de 2023 incumplió con las disposiciones de la Ley Núm. 129-

---

[2] SUMAC TA, Entrada 1, Escritura Pública Núm. 159, *Estableciendo Régimen de la Propiedad Horizontal del Edificio de Apartamentos "Condado Towers",* otorgada el 6 de mayo de 1959 ante el notario público Manuel García Cabrera.
[3] *Íd.,* pág. 31.
[4] SUMAC TA, Entrada 3, QUERELLA de 2023.

2020 (Ley de Condominios), la escritura matriz del Condominio y su reglamento. En específico, expuso que los acuerdos alcanzados tienen el propósito de despojarlo del uso exclusivo del segundo estacionamiento asignado. Así pues, como remedio, solicitó que: (1) se declare nula la convocatoria a la asamblea ordinaria del 31 de mayo de 2023; (2) se declare nula la adopción de las reglas para el sorteo de los estacionamientos aprobadas en dicha asamblea; (3) se declare nulo la adjudicación mediante sorteo de dichos espacios de estacionamientos; (4) se declare nula cualquier determinación tomada en esa asamblea sobre la localización del generador eléctrico; (5) se le ordene a la Junta revertir la fachada del Condominio al estado original que existía previo a la instalación del generador eléctrico; y (6) se permita a los querellantes inspeccionar ciertos documentos relacionados con el sorteo de los estacionamientos.

Posteriormente, el 10 de abril de 2025, el matrimonio Bauer-Montalvo instó la querella número C-SAN-2025-0021265[5]. En ella, informaron que, en la asamblea ordinaria del 18 de febrero de 2025, cuyo proceso impugnó, el Condominio había dejado sin efecto el reglamento de sorteo de estacionamientos aprobado en el 2023 sustituyéndolo por un nuevo reglamento de sorteo de estacionamientos. Indicó que, basado en este nuevo reglamento, además de asignar determinados estacionamientos a ciertos titulares, el Condominio le exigió al matrimonio Bauer-Montalvo la firma de un contrato de alquiler para poder hacer uso del segundo estacionamiento. El matrimonio Bauer-Montalvo sostuvo que, ante su negativa a firmar el referido contrato, el Condominio lo amenazó con sortear el segundo estacionamiento asignado a su apartamento. Así, en esta nueva querella, el matrimonio Bauer-Montalvo afirmó

---

[5] SUMAC TA, Entrada 18, NOTIFICACION QUERELLA.

que el nuevo reglamento de sorteo de estacionamientos adolece de las mismas deficiencias que tenía el reglamento de sorteo de estacionamientos del 2023. A su vez, detalló que: (1) la Junta insiste en sortear el segundo estacionamiento de los querellantes, pero no así el segundo estacionamiento del *pent-house*, lo que implica un trato desigual entre condóminos; (2) la Junta y la administración del Condominio permiten que algunos titulares estacionen más de un vehículo de motor en un solo espacio de estacionamiento sin pago adicional; (3) la Junta obliga a los querellantes a pagar cuota adicional por el uso del segundo estacionamiento y no hace lo mismo con el segundo estacionamiento que utiliza el titular del *pent-house*; y (4) la Junta pretende, por vez primera, que los querellantes firmen un contrato de alquiler por el uso del segundo estacionamiento. Ante ello, como remedio en esta querella número C-SAN-2025-0021265 el matrimonio Bauer-Montalvo reclamó que se le reconociera la asignación del segundo estacionamiento o, en la alternativa, que se rifen los todos los segundos estacionamientos, incluyendo el asignado al *pent-house*.

En igual fecha, 10 de abril de 2025, el matrimonio Bauer-Montalvo presentó ante el DACo una *Urgente querella jurada solicitando interdicto posesorio y orden de cese y desista* para que el Condominio se abstuviera de perturbar la posesión de los querellantes del segundo estacionamiento hasta la resolución de la querella[6]. Días después, el 21 de abril de 2025, y por motivo de que la Junta anunció la rifa del segundo estacionamiento asignado al apartamento del matrimonio Bauer-Montalvo, éste instó una *Solicitud reiterada de orden de cese y desista y vista urgente de conformidad con el Artículo 692 del Código de Enjuiciamiento ante nuevas actuaciones de la Junta* suplicando que se le ordenara a la

---

[6] SUMAC TA, Entrada 17, URGENTE QUERELLA.

Junta cesar y desistir de rifar el estacionamiento objeto de la querella.[7]

En cuanto a las solicitudes de cese y desista, el 22 de abril de 2025, el DACo dictó una ***Notificación y orden*** en la querella número C-SAN-2023-0015552. En dicha orden, la agencia declaró no ha lugar la *Solicitud reiterada de orden de cese y desista y vista urgente de conformidad con el Artículo 692 del Código de Enjuiciamiento ante nuevas actuaciones de la Junta* presentada por el matrimonio Bauer-Montalvo. No obstante, a tenor con la Regla 30 del Reglamento Núm. 9386 de 6 de junio de 2022, conocido como *Reglamento de Condominios,* ordenó al Condominio, su Junta y agente administrador, **el cese y desista** de todo acto, decisión o determinación que guarde relación directa o indirectamente con la rifa del estacionamiento objeto de la querella hasta que el DACo resolviera la controversia.[8]

Dos días más tarde, el 24 de abril de 2025, el DACo dictó la *Resolución* recurrida, mediante la cual desestimó con perjuicio la querella número C-SAN-2025-0021265 por duplicidad del reclamo, ordenando su cierre y archivo. La agencia expuso que:

> Examinado el expediente administrativo para la querella de epígrafe, así como el expediente de la querella C-SAN-2023-0015552, resulta que las alegaciones, así como las controversias y reclamaciones consignadas en ambas querellas son idénticas con la presente querella. Precisamente la parte querellante, en las alegaciones contenidas en el documento titulado "Urgente Querella Jurada Solicitando Interdicto Posesorio y Orden de Cese y Desista" claramente establece que la presente querella se relaciona a la querella C-SAN-2023-0015552, ya que ambas impugnan como ultra vires ciertas reglas adoptadas por la parte querellada de epígrafe. A esos efectos, este Departamento concluye que existe una duplicidad de causas toda vez que las querellas C-SAN-2023-0015552 y C-SAN-2025-0021265 comprenden las mismas cuestiones de hechos o de derecho.[9]

---

[7] SUMAC TA, Entrada 19.
[8] SUMAC TA, Entrada 20, ORDEN CESE Y DESISTA.
[9] SUMAC TA, Entrada 2, RESOLUCION RECURRIDA de 24 DE ABRIL DE 2025.

A tenor con lo resuelto, el DACo ordenó continuar con los procesos de la querella número C-SAN-2023-0015552.

En desacuerdo con dicha determinación, el 7 de mayo de 2025, el matrimonio Bauer-Montalvo presentó una solicitud de reconsideración, acompañada de una moción solicitando la consolidación de las querellas números C-SAN-2023-0015552 y C-SAN-2025-0021265. El DACo no actuó sobre la solicitud de reconsideración.

Inconforme, el 20 de junio de 2025, el matrimonio Bauer-Montalvo instó el recurso que nos ocupa, en el que apuntó el siguiente señalamiento de error:

> Erró el DACO al concluir: (1) que las alegaciones, conclusiones y reclamaciones consignadas en las querellas C-SAN-2025-00211265 y C-SAN-2023-0015552 son idénticas; (2) que existe una duplicidad de causas; (3) que comprenden las mismas cuestiones de hechos o de derecho y por ende desestimar con perjuicio la querella C-SAN-2025-00211265 en vez de consolidar ambas querellas según dispone la Regla 17 8034 del Reglamento de DACO.

En síntesis, el matrimonio Bauer-Montalvo alega que las querellas números C-SAN-2023-0015552 y C-SAN-2025-0021265 impugnan actuaciones distintas y separadas, realizadas en fechas distintas y que no se limitan a la aprobación de unas reglas de sorteo de espacios de estacionamiento. Por ello, solicita que se deje sin efecto la desestimación con perjuicio de la querella número C-SAN-2025-0021265 y se ordene su consolidación con la querella número C-SAN-2023-0015552.

En específico, el matrimonio Bauer-Montalvo indica que la querella número C-SAN-2023-0015552 impugna el reglamento de sorteo de estacionamientos aprobado el 31 de mayo de 2023 y las actuaciones y/o determinaciones de la asamblea celebrada ese día. Mientras, la querella número C-SAN-2025-0021265 cuestiona el nuevo reglamento de sorteo de estacionamientos aprobado el 18 de febrero de 2025 y las actuaciones y/o determinaciones llevadas a

cabo por los querellados a tenor de este. Añadió que, a diferencia de la querella número C-SAN-2025-0021265, en la querella número C-SAN-2023-0015552 no se incluyó como coquerellada a APM Administration Group. En general, el matrimonio Bauer-Montalvo reconoce que, si bien los planteamientos legales que sustentan el reclamo de nulidad de ambos reglamentos son similares, las actuaciones del Consejo y los reglamentos que se cuestionan son diferentes.

Por su parte, en el *Alegato del recurrido*, presentado el 21 de julio de 2025, el Consejo y la Junta, conjuntamente, apuntaron que, conforme al principio de deferencia hacia las decisiones administrativas, este Tribunal debe confirmar la determinación recurrida.

## II.

## A.

Es norma firmemente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones de los organismos administrativos. Ello, dado que las agencias administrativas cuentan con vasta experiencia y conocimiento especializado en cuanto a los asuntos que les han sido encomendados. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833, 839 (2021), citando a *OCS v. Universal*, 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800 (2012); *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012).

Como resultado, la decisión de una agencia administrativa gozará de una presunción de legalidad y corrección que será respetada, siempre que la parte que la impugna no produzca evidencia suficiente para rebatirla. *Transp. Sonell, LLC v. Jta. Subastas ACT,* 214 DPR ___ (2024), 2024 TSPR 82; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012).

En cuanto a las determinaciones de hecho que realiza una agencia, éstas serán sostenidas por el tribunal si de basan en evidencia sustancial que obra en el expediente administrativo. Sec. 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675. Por evidencia sustancial se entiende "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión". *Rolón Martínez v. Superintendente,* 201 DPR 26, 36 (2018); *González Segarra et al. v. CFSE,* 188 DPR 252, 277 (2013); *Otero v. Toyota,* 163 DPR 716, 728-729 (2005). Por lo tanto, la parte afectada por la decisión administrativa deberá reducir el valor de la evidencia impugnada o demostrar la existencia de otra prueba que sostenga que la actuación del ente administrativo no estuvo basada en evidencia sustancial. *Otero v. Toyota,* supra, pág. 728.

Ahora bien, respecto a las conclusiones de derecho de las decisiones de las agencias administrativas, la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU), Ley Núm. 38-2017, señala que éstas pueden ser revisadas en todos sus aspectos por el tribunal. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Al respecto, recientemente, en *Vázquez v. Consejo de Titulares,* 216 DPR ___ (2025), 2025 TSPR 56 (resuelto el 21 de mayo de 2025), el Tribunal Supremo hizo eco de la decisión del foro federal en el caso *Loper Bright Enterprises v. Raimondo,* ___ U.S. ___, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024), y determinó que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. En *Vázquez,* el Tribunal Supremo enfatizó la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra*. Puntualizó que, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos**. Con ello, nuestro

Tribunal Supremo pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas. *Vázquez v. Consejo de Titulares*, supra. En fin, delimitó que la interpretación de la ley es una tarea que le corresponde a los tribunales y como corolario, los tribunales deben revisar las conclusiones de derecho en todos sus aspectos. Ello, como mecanismo interpretativo del poder judicial. *Íd.*

Por consiguiente, la deferencia concedida a las agencias administrativas únicamente cederá cuando: (1) la determinación administrativa no esté basada en evidencia sustancial; (2) el organismo administrativo haya errado en la aplicación o interpretación de las leyes o los reglamentos que se le ha encomendado administrar; (3) cuando el organismo administrativo actúe arbitraria, irrazonable o ilegalmente, al realizar determinaciones carentes de una base racional; o, (4) cuando la actuación administrativa lesione derechos constitucionales fundamentales. *Super Asphalt v. AFI y otros,* 206 DPR 803, 819 (2021); *Torres Rivera v. Policía de Puerto Rico,* 196 DPR 606, 628 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

**B.**

El DACo fue creado como una agencia especializada con el propósito primordial de vindicar e implantar los derechos del consumidor y proteger los intereses de los compradores. Artículos 2 y 3 de la Ley Núm. 5 del 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor,* 3 LPRA secs. 341 (a)(b). Este organismo tiene el deber de implementar una estructura de adjudicación administrativa mediante la cual se considerarán las querellas de los consumidores y se concederán los remedios pertinentes conforme al derecho aplicable. 3 LPRA sec. 341e (d).

La Regla 10.1 del *Reglamento de Procedimientos Adjudicativos* del DACo, Reglamento Núm. 8034 de 13 de julio de 2011 (Reglamento Núm. 8034), le reconoce a dicha agencia la facultad para desestimar una querella, a iniciativa propia o a solicitud del querellado, si ésta no presenta una reclamación que justifique la concesión de un remedio, por inmeritoria, por falta de jurisdicción, o por cualquier fundamento que en Derecho proceda. La regla le concede discreción al DACo para ordenar al querellante que muestre causa por la cual no deba desestimarse la querella. A su vez, la Regla 10.2 del citado reglamento provee para la reconsideración o revisión judicial de las decisiones desestimatorias.

Por su parte, la Regla 17 del Reglamento Núm. 8034 dispone que "[c]uando estén pendientes ante el Departamento querellas que comprendan cuestiones comunes de hechos o de derecho, el Departamento, podrá ordenar la consolidación de las mismas y la celebración de una sola vista administrativa de cualquiera o de todas las cuestiones litigiosas comprendidas en dichas querellas y podrá dictar, a este respecto, aquellas órdenes que eviten gastos o dilaciones innecesarias". Según la regla citada, el DACo también tiene la discreción de ordenar la consolidación de dos o más querellas que estén ante su consideración.

Sobre la figura de la consolidación, el Tribunal Supremo ha indicado que una determinación inicial sobre una solicitud de consolidación, efectuada luego de un *análisis ponderado de la totalidad de las circunstancias* de los casos cuya consolidación se solicita, merece gran deferencia por parte del foro revisor. Solamente será alterada cuando se haya omitido considerar algún factor importante o cuando de alguna otra forma se incurra en un abuso de discreción. Así que, aunque un foro adjudicativo tiene discreción para ordenar la consolidación de dos o más casos, la determinación emitida a tales efectos merecerá deferencia por parte del foro revisor,

si tal determinación fue efectuada luego del referido análisis ponderado. *Hosp. San Fco. v. Sria. de Salud*, 144 DPR 586, 594 (1997).

**III.**

En la resolución recurrida, el DACo dedujo que las alegaciones, conclusiones y reclamaciones consignadas en las querellas C-SAN-2023-0015552 y C-SAN-2025-00211265 son idénticas, que existe una duplicidad de causas, que las querellas comprenden las mismas cuestiones de hechos o de derecho y, fundamentado en ello, desestimó con perjuicio la querella C-SAN-2025-00211265.

No obstante, de la lectura y análisis de ambas querellas se desprende que la Querella número C-SAN-2023-0015552 cuestiona actuaciones y/o determinaciones del Consejo distintas, separadas y anteriores a las que se cuestionan en la querella número C-SAN-2025-0021265. En la primera, se impugnan varios acuerdos de la asamblea extraordinaria de 31 de mayo de 2023, incluida la aprobación de un reglamento de un sorteo de estacionamientos. También se solicita que se anule cualquier determinación tomada respecto a la localización del generador eléctrico y que se ordene revertir la fachada del Condominio a su estado original.

En la segunda querella, número C-SAN-2025-0021265, se objeta la aprobación del nuevo reglamento de sorteo de estacionamientos en asamblea de 18 de febrero de 2025, el trato desigual entre condóminos al excluir de pago y sorteo el segundo espacio de estacionamiento del *pent-house,* el presunto uso inadecuado de los espacios asignados y el requerimiento al matrimonio Bauer-Montalvo de firmar un contrato de alquiler para poder hacer uso del segundo estacionamiento. Así pues, si bien los planteamientos legales para sustentar la nulidad de ambos reglamentos son controversias de derecho similares, las actuaciones

del Consejo, así como los reglamentos que se cuestionan, son distintos. La orden de cese y desista emitida por el DACo el 22 de abril de 2025 y dirigida al Condominio solamente prohíbe que la Junta y su agente administrador tomen decisiones que guarden relación directa o indirecta con la rifa del segundo estacionamiento asignado al matrimonio Bauer-Montalvo. Además, hay que subrayar que la desestimación con perjuicio de la querella número C-SAN-2025-0021265 dejaría desprovisto al matrimonio Bauer-Montalvo de remedio en cuanto a las actuaciones del Consejo y el Reglamento aprobado en el 2025.

En conclusión, luego de efectuar análisis ponderado de la totalidad de las circunstancias establecido por el Tribunal Supremo para la consolidación de causas, concluimos que el DACo abusó de su discreción al desestimar la querella número C-SAN-2025-0021265, en lugar de ordenar su consolidación con la querella número C-SAN-2023-0015552. Existiendo cuestiones de derecho comunes en ambas querellas, resolvemos que lo que procedía era su consolidación, en lugar de la desestimación de la querella número C-SAN-2025-0021265. Por consiguiente, se revoca la resolución desestimatoria recurrida, se reinstala la querella número C-SAN-2025-00211265, y se ordena la continuación de los procedimientos ante el DACo de forma compatible con lo aquí resuelto.

**IV.**

Por los fundamentos que anteceden, se revoca la resolución recurrida, se reinstala la querella número C-SAN-2025-00211265 y se ordena la continuación de los procedimientos ante el Departamento de Asuntos del Consumidor de forma compatible con lo aquí resuelto.

Notifíquese.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones